689 A.2d 219

**In re Condemnation by the Pennsylvania Turnpike Commission of 1.169 Acres in Fee Simple, in Big Beaver Borough, Beaver County, Commonwealth of Pennsylvania, for the Beaver Valley Expressway Project.**

**Edward and Lorraine DENES, Appellants,**

**v.**

**PENNSYLVANIA TURNPIKE COMMISSION, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 16, 1996.

Decided Feb. 18, 1997.

Michael J. Boyle, Hugh F. McGough, Pittsburgh, for Edward and Lorraine Denes.

Samuel P. Kamin, Pittsburgh, for Pennsylvania Turnpike Commission.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

## OPINION

NIGRO, Justice.

The Pennsylvania Turnpike Commission took Edward and Lorraine Denes' property pursuant to its eminent domain power. The Denes appeal a Commonwealth Court Order that reversed the trial court's award of damages under the Assembled Economic Unit Doctrine. For the reasons set forth below, we reverse the Commonwealth Court's decision.

The Denes owned 1.169 acres of land and a one-story garage in Beaver County, Pennsylvania. They operated a vehicle repair and salvage shop in the garage. Over time, they expanded and remodeled the garage to accommodate their business. The Denes had a contract with the Turnpike Commission that gave them the exclusive right to tow abandoned and disabled vehicles from a section of the Pennsylvania Turnpike. The contract generated 70 percent of the Denes' business income. Under the contract, the Denes had to be able to arrive at the scene of a disabled vehicle in their territory within 30 minutes. The Turnpike Commission could terminate the contract without cause with 30 days notice.

In January of 1990, the Turnpike Commission filed a Declaration of Taking to condemn the Denes' property. In April of 1990, it notified the Denes that it would terminate their service contract in 30 days. The Denes were eligible to continue service with the Turnpike Commission if they found a

new location. In June of 1990, the Turnpike Commission paid the Denes estimated just compensation of $88,000.

The Turnpike Commission petitioned for the appointment of a board of viewers to determine the Denes' damages in November of 1990. After both parties presented evidence, the viewers issued a report on the Denes' damages in October of 1991. Because the viewers did not award compensation under the Assembled Economic Unit Doctrine (AEUD), the Denes appealed.

 The AEUD affords additional compensation for takings:

> when the nature of the business requires a unique building for its operation, such that no other building within a reasonable distance is adaptable to the functioning of this business, then the condemned building, itself, will be considered an essential part of any meaningful economic unit in this industry. . . .[E]ven though all or most of the machinery, equipment and fixtures are removable, since no new site is available, condemnee cannot maintain his economic position by relocating. Therefore, all machinery, equipment and fixtures which are vital to the economic unit and a permanent installation therein will be considered a part of the real estate of the condemned property under the [AEUD]. Only thus can the condemnee receive "just compensation."

*Singer v. Redevelopment Auth.*, 437 Pa. 55, 67, 261 A.2d 594, 600–01 (1970).[1] The Denes contend that their business required a unique building based upon the Turnpike Commission's requirement that they be able to get to disabled vehicles within 30 minutes. *See Redevelopment Auth. v. Yee Kai Teung*, 5 Pa.Cmwlth. 65, 289 A.2d 498 (1972)(the AEUD applied where a condemnee could not relocate his business because it served customers in its immediate vicinity).

The trial court held a bench trial on the AEUD's applicability. It found that the Denes actively sought another property for their business when they learned about the pending con-

1. Other instances where the AEUD applies are not at issue.

demnation in early 1989. They continued to look for another property throughout the year and in 1990. The court held that the Denes were unable to find a suitable property that would enable them to get to disabled vehicles on the turnpike within 30 minutes. The trial court rejected seven properties that the Turnpike Commission believed were adaptable for the Denes' business. Because there was no property available and adaptable for the Denes' business, the trial court held that the AEUD applies.

The Commonwealth Court found that the Denes could have relocated to one of two properties proposed by the Turnpike Commission and reversed. The trial court agreed that the two properties, the Parillo property and Bill's Garage, were suitably located to perform the Turnpike Commission contract. It rejected the Parillo building because it was very small and required extensive reconstruction and enlargement. It rejected Bill's Garage because it was not for sale in 1989.

■■■■ Appellate review in an eminent domain case is limited to a determination of whether the trial court abused its discretion or committed an error of law, and whether the findings of fact are supported by substantial evidence. *In re Condemnation of 30.60 Acres of Land*, 132 Pa.Cmwlth. 158, 572 A.2d 242, 244 (1990). Questions of credibility and conflicts in the evidence presented are for the trial court to resolve. *Dept. of Transportation v. O'Connell*, 521 Pa. 242, 248, 555 A.2d 873, 875 (1989). If sufficient evidence supports the trial court's findings as factfinder, they should not be disturbed. *Id.*

■■■■ The trial testimony conflicted as to whether the Parillo property was adaptable for the Denes' business. Because the building on the property had been razed, there were no photographs or other documents depicting it at trial. The court assessed the witnesses' testimony about the property. Lorraine Denes testified that the Parillo building was old and very small. It was a former gas station with one bay in which to repair vehicles. The Denes' garage had three bays. Two of them were oversized to accommodate tractor trailers. The

Turnpike Commission's experts agreed that the building was in disrepair and small but testified that it was adaptable. By comparing the description of the Parillo property with the Denes' property, which was modeled to accommodate work under the Turnpike Commission contract, the trial court reasonably inferred that the Parillo property required extensive reconstruction and expansion. There was sufficient evidence supporting the trial court's conclusion that the Parillo property was not adaptable for the Denes' business.

The trial testimony about whether Bill's Garage was for sale when the Denes were looking to relocate was also conflicting. The Commonwealth Court held that the record did not support the trial court's finding that Edward Denes talked to Bill's Garage's owner about buying the property. Because of this error, the Commonwealth Court concluded that the property was available.

The Commonwealth Court correctly found that Edward Denes did not talk to Bill's Garage's owner in 1989. Nonetheless, there was sufficient evidence supporting the trial court's conclusion that the property was not for sale at that time. The Turnpike Commission's expert admitted that the property was not listed for sale until December of 1990—eight months after the Turnpike Commission terminated the Denes' contract. While Edward Denes did not speak to the current owner, he did ask the bank that previously owned the property about buying it and was told that it was not for sale. Based upon these facts, the trial court concluded the property was unavailable. It rejected the Turnpike Commission's witnesses' testimony that the property could have been purchased before it was officially listed for sale.

The Commonwealth Court failed to confine its review to whether sufficient evidence supported the trial court's conclusions. Instead, it made new findings of fact where there was conflicting evidence. There was substantial evidence supporting the trial court's decision that the Parillo property required extensive reconstruction and was therefore not adaptable for the Denes' business. Similarly, there was substantial evidence

that Bill's Garage was not for sale during the relevant time period. Because the Commonwealth Court departed from the proper standard of review, we reverse its decision. Jurisdiction relinquished.

NEWMAN, J., did not participate in the consideration or decision of this case.

ZAPPALA, J., concurs in the result.