939 A.2d 331

## MIDDLETOWN TOWNSHIP

v.

The LANDS OF Josef Seegar STONE, Executor of the Estate of Sara Seegar Stone, Deceased, Josef Seegar Stone and Francine Lida Stone, Executors of the Estate of Ezra C. Stone, a/k/a Ezra Stone, Deceased, and Josef S. Stone and Francine Lida Stone

**Appeal of Josef Seegar Stone.**

Supreme Court of Pennsylvania.

Argued Oct. 17, 2006.

Decided Dec. 27, 2007.

608

Don F. Marshall, Esq., Nichole A. Blaschak, Esq., Stuckert & Yates, Newton, for Josef Seegar Stone.

David F. Conn, Esq., Edward Rudolph, Esq., Rudolph, Pizzo & Clarke, L.L.C., Trevose, for Middletown Township.

John Frazier Hunt, Esq., Hunt & Ayres, L.L.P., Philadelphia, for Estate of Ezra C. Stone.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## *MAJORITY OPINION*

Chief Justice CAPPY.[1]

At issue in this matter is whether Middletown Township, a township of the second class, properly exercised the power of eminent domain in taking the Stone farm to provide public recreational space under the Second Class Township Code, 23 P.S. § 67201, when the Open Space Lands Act, 32 P.S. § 5008, prohibits second-class townships from exercising eminent domain in order to preserve open space. For the reasons that follow, we conclude that a second-class township has the authority to condemn property under the Township Code, for any legitimate recreational purpose, despite the fact that the Lands Act does not extend the authority to take for open space purposes. However, we further conclude that the record evidence in this case does not support the conclusion of the trial court that the fundamental purpose behind the Township's taking was recreation, and therefore, the taking is

1. This case was reassigned to this author.

invalid. Accordingly, the order of the Commonwealth Court is reversed.

The property at issue in this litigation is a 175–acre farm in Bucks County owned by the Stone family. The farm was partitioned by stipulated order in 1998 into four parcels. On September 12, 2000 the Middletown Board of Supervisors held a public meeting at which they considered a request to approve a preliminary plan of major subdivision. The chairman of the board, Mel Kardos, expressed his concern that the smallest parcel would be developed. The Supervisors discussed this concern and finally decided to table action on the partition until they could set up a meeting with the owners of the farm to discuss the possibility of acquiring the land to prevent any development. Two weeks later, on September 26, 2000 another public meeting was held. Kardos motioned to authorize the Township to condemn the entire farm, as if it had never been partitioned, and the Board approved this motion. The Township then passed a resolution and filed a declaration of taking citing its authority under the Township Code at 53 P.S. § 65101 *et seq.*, "to acquire a fee simple interest to the [farm] for recreation and open space purposes." (Declaration of Taking). The next day Kardos spoke to the Bucks County Courier Times. Kardos stated that the Township wanted to acquire the farm to preserve it as open space, "We don't want to kick Joe Stone off the farm or anything like that. If we're successful in acquiring the farm, he can keep doing whatever he is doing on it. We just don't want it to go to developers." (Exhibit 10 of the Deposition of Mel Kardos).

On November 8, 2000 Joseph Seegar Stone filed preliminary objections to the declaration of taking arguing, *inter alia*, that the Lands Act prohibited the Township from taking the farm for the purpose of preserving open space and preventing development, as the Lands Act states that "local government units other than counties or county authorities may not exercise the power of eminent domain in carrying out the provision of this act." 32 P.S. § 5008(b). Stone argued that the Township's action was not redeemed by the fact that the Township

Code permits a second-class township to exercise the power of eminent domain for recreational purposes. 53 P.S. § 67201.

In making a determination on the preliminary objections, the trial court relied on the record, in lieu of a hearing, which included depositions taken in August 2002. *See* 26 Pa.C.S. § 306(a)(3) and (f)(2). Ultimately, the trial court held that the General Assembly granted the Township the legal authority to acquire land through the exercise of the right of eminent domain for recreational purposes. 53 P.S. § 67201. The trial court then found that the purpose of the condemnation was for recreational uses by concluding that:

(1) The long-range goal of the Township's Recreation, Parks and Open Space Plan was to acquire the Stone property, along with other properties for recreational purposes.

(2) The Township has no specific plan for the Stone Farm, but had considered various options which include:

(a) Allowing Mr. Stone to continue to farm a portion of the land;

(b) Developing recreational uses for the remainder providing passive recreation;

(c) Re-instituting the Celebration of Lights ceremony.

(3) Although the condemnation of the property for the intended recreational purposes may have the inevitable consequence of preservation, [of open space by preventing development] this does not invalidate the taking.

*Middletown Township v. The Lands of Josef S. Stone,* No. 00–06119–25–6, slip op. at 5–6 (C.P.Pa. Dec. 3, 2004). Accordingly, the trial court overruled Stone's preliminary objections to the declaration of taking.

On appeal to the Commonwealth Court, taken as a matter of right pursuant to Pa.R.A.P. 311(e), Stone again argued that the Township exceeded its statutory authority by condemning the farm under the guise of recreational purposes when the true purpose was to prevent development and conserve open space. First, the Commonwealth Court noted that under Pennsylvania law, a public park is a proper recreational use,

and that the evidence supported the finding of the trial court that the Township condemned the farm for recreational uses. *Middletown Township v. The Lands of Josef S. Stone*, 882 A.2d 1066, 1072 (Pa.Cmwlth.2005). The court specifically observed that two witnesses testified to the use of the farm as an extension of an existing public park, and that the use of the farm for future recreational uses was part of an established long-term plan.[2] *Id.* Further, the Commonwealth Court found that the fact that the declaration of taking specifically stated that one purpose for the taking was to conserve open space was irrelevant. *Id.* The court noted that the Open Space Lands Act merely forbids the Township from exercising eminent domain "in carrying out the provisions of this act," and the Township did not purport to act under authority of the Lands Act, but rather, purported to take under the Township Code, which expressly grants that power for recreational purposes. *Id.* at 1072–73. As the declaration of taking also cited to recreational purposes authorized under the Township Code, the Commonwealth Court determined that the restriction under the Lands Act did not apply, and affirmed the trial court's decision to overrule the preliminary objections. *Id.*

Then–President Judge Colins filed a dissenting opinion asserting that the totality of the record made it overwhelmingly apparent that the Township's purpose was to create open space to preserve property values and enhance the aesthetic livability of the Township. *Id.* at 1076. He noted that this purpose is not authorized under the Township Code or the Open Space Lands Act, and would invalidate the taking. *Id.* He also emphasized that the Township specifically stated that the taking was to "acquire recreational and open space." *Id.* at 1075. Judge Colins then contended that the admission on the face of the declaration of taking that one of the purposes for condemnation was for the creation of open space put the

2. The Commonwealth Court reported that one board member testified that after the taking, the farm had been used for recreational purposes, including hayrides, picking pumpkins, picking crops, and school trips to learn how a working farm operates. Middletown Township, 882 A.2d at 1071. The record does not support this assertion; the board member in fact testified that *another* farm had been acquired by the Township and had been put to such a use. (Deposition of Mel Kardos).

Township in violation of the Lands Acts which specifically prohibits a Township from condemning for that purpose. *Id.* Judge Colins concluded by stating, "The fact that the taking is only partially illegal cannot be bootstrapped into a lawful taking." *Id.*

▮▮▮ In our limited grant we asked whether the Commonwealth Court erred in affirming the Court of Common Pleas in overruling the preliminary objections to the declaration of taking.[3] We also asked the parties to discuss whether the Open Space Lands Act imposes any limitations on the exercise of eminent domain by second-class townships.[4] First we will set forth the pertinent language of the Township Code and the Open Space Lands Act, then we will consider the arguments of the parties before addressing the issues before us.

The Township Code states:

§ 67201. Acquisition of lands and buildings

The board of supervisors may designate lands or buildings owned, leased or controlled by the township for use as parks, playgrounds, playfields, gymnasiums, swimming pools, indoor recreation centers, public parks and other recreation areas and facilities and acquire lands or buildings by lease, gift, devise, purchase or **by the exercise of the right of eminent domain for recreational purposes** and construct and equip facilities for recreational purposes.

53 P.S. § 67201 (emphasis added). The Lands Act allows a local government unit to acquire any interest in real property situated within its boundaries by condemnation for any one of

---

**3.** For this issue, our standard of review is abuse of discretion. *See Denes v. Penn. Turnpike Commission*, 547 Pa. 152, 689 A.2d 219, 222 (1997). An abuse of discretion exists when the court has reached a conclusion which overrides or misapplies the law, or when the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. *Commonwealth v. Eichinger*, 591 Pa. 1, 915 A.2d 1122, 1140 (2007). The scope of our review is plenary as this court may review the entire record in making its decision. *Commonwealth v. Delbridge*, 580 Pa. 68, 859 A.2d 1254, 1257 (2004).

**4.** As this is a question of law, our standard of review on this issue is de novo. *See Weaver v. Lancaster Newspapers, Inc.*, 592 Pa. 458, 926 A.2d 899, 902–03 (2007). The scope of review is plenary. *Id.*

a host of purposes related to the conservation of land including efficient development, recreation and the preservation of open space. *See* 32 P.S. § 5005. The Lands Act does provide the following restrictions, however:

§ 5008. Exercise of eminent domain

(b) Notwithstanding the provisions of subsection (a) or section 5(c), **local government units** other than counties or county authorities **may not exercise the power of eminent domain in carrying out the provisions of this act.**

32 P.S. § 5008(b).

Stone argues that the Township did not have the authority to take the farm, even though it ostensibly premised the taking on authority of the Township Code, because the true purpose of the taking was to prevent development and to conserve open spaces. This purpose was reflected squarely in the face of the declaration of taking, and in the deposition testimony of the members of the Board of Supervisors, and it is a purpose for which no authority exists which allows the Township to take. Stone further contends that while a second-class township has the power to condemn for recreational purposes under the Township Code, Middletown Township overstepped this authority and condemned the farm without any recreational plan for the property. Moreover, Stone asserts that the Township has continuously stressed the importance of allowing Stone to continue to privately farm the property after it has been condemned, which is clearly a private venture and not a public purpose permitted by law.

Stone acknowledges that the Township did refer to the farm as a tract of land considered for preservation in its 1998 Addendum to its 1991 Recreation, Parks and Open Space Plan, yet he avers that there is no evidence that the Township ever instituted or even discussed recreational uses of the property; rather, the plan had been focused on conservation of the farm as open space. After the declaration of taking, members of the Board of Supervisors testified that the Township intended to use a portion of the 175 acres to extend a driveway for an adjacent park where a town celebration called the Celebration

of Light was once held, but Stone asserts that the scope of the taking would then far exceed the after-proposed recreational use and that the Commonwealth Court has stated that "private property may be taken for public purposes only in such an amount and to such an extent as these purposes reasonably require." *See Township of Cornplanter v. McGregor*, 745 A.2d 725, 727 (Pa.Cmwlth.2000). Therefore, Stone claims that the Township has exceeded its authority to take, and thus the taking is invalid.

In response, the Township contends that its true purpose in condemning the land was not to prevent development, because the record demonstrates that the farm had been targeted in the Township's Parks, Recreation and Open Space Plan. Moreover, the Township maintains that Stone has misstated the relevant inquiry by focusing on the fact that certain Township Supervisors expressed their opposition to development. Rather, according to the Township, the sole question is whether the Township could lawfully condemn for recreational purposes. The Township argues that this is exactly what it did, pursuant to a long-term plan laid out in the Parks, Recreation and Open Space Plan, and under the authority of the Township Code, which authorizes a taking for recreational purposes. The Township avers that it never purported to act under the Lands Act, and that the limitation on the power of second-class townships found within that act only apply when a government entity attempts to exercise eminent domain in carrying out the provisions of that act. Thus, the Township maintains that although the Lands Act does not provide it with statutory authority to take for open space purposes, that fact does not preclude the Township from exercising its statutory authority under the Township Code.

Moreover, the Township points out that preservation of open space, such as a park, with no improvement aside from trails does constitute a legitimate recreational use. The Township avers that this was the case in *In re Condemnation of Lands of Laughlin*, 814 A.2d 872, 876–77 (Pa.Cmwlth.2003) *appeal denied*, 573 Pa. 700, 825 A.2d 1263 (2003), in which the Commonwealth Court held that a public park, which can be

defined as a tract of ground kept more or less in its natural state and devoted to the purpose of pleasure, recreation and amusement, has consistently been recognized by the Pennsylvania Supreme Court to serve a recreational purpose. Therefore, the Township argues that it acted within its authority to condemn and that the taking should be upheld.

■ Preliminarily, this Court holds that, as a matter of law, a second-class township does have the authority to condemn property under the Township Code, for any legitimate recreational purpose, despite the restrictions promulgated by the Legislature in the Lands Act. When this Court is faced with a question of statutory interpretation, we must adhere to the rules promulgated by the Statutory Construction Act in order to ascertain and effect the intent of the Legislature as conveyed by the statutory language. 1 Pa.C.S. § 1921(a). When the words of a statute are clear and free from all ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). Here the language is clear. The Township Code gives power to second-class townships to condemn land for recreational purposes. The Lands Act withholds power from second-class townships to condemn land for open space purposes. The two statutes do not conflict. The fact that the Open Space Lands Act exempts second-class townships from eminent domain powers to further the purposes enumerated under the Lands Act simply means that second-class townships have no authority to invoke the Lands Act to condemn property. 32 P.S. § 5008(b). This has no effect on the ability of a second-class township to take for recreational purposes under the Township Code. 53 P.S. § 67201.

■ Next we must consider if the Township acted within the scope of the authority granted by the Township Code by properly invoking its authorized purpose. This Court has stressed that the exercise of the right of eminent domain "is necessarily in derogation of a private right, and the rule in that case is that the authority is to be strictly construed: What is not granted is not to be exercised." *Winger v. Aires,*

371 Pa. 242, 89 A.2d 521, 523 (1952). The Takings Clause of the Fifth Amendment provides the only means of validly overcoming the private right of property ownership and that is to take for the "public use." U.S. CONST. amend. V. In other words, without a public purpose, there is no authority to take property from private owners.

[7] According to our Court, "a taking will be seen as having a public purpose only where the public is to be the primary and paramount beneficiary of its exercise." *In re Bruce Ave.*, 438 Pa. 498, 266 A.2d 96, 99 (1970). In considering whether a primary public purpose was properly invoked, this Court has looked for the "real or fundamental purpose" behind a taking. *Belovsky v. Redevelopment Authority*, 357 Pa. 329, 54 A.2d 277, 283 (1947). Stated otherwise, the **true** purpose must primarily benefit the public. What's more, as a second-class township, Middletown Township is limited in its power to take in that it has been authorized by statute to exercise eminent domain only for a single public purpose, that of recreation. 53 P.S. § 67201. Recreational use must be the true purpose behind the taking or else the Township simply did not have the authority to act, and the taking was void *ab initio.*

This means that the government is not free to give mere lip service to its authorized purpose or to act precipitously and offer retroactive justification. In *School District of Pittsburgh*, 430 Pa. 566, 244 A.2d 42, 46 (1968), this Court held that "[u]nless the property is acquired for an authorized public use, and after a suitable investigation leading to an intelligent, informed judgment by the condemnor, the condemnation is invalid." Likewise, in *Pidstawski v. South Whitehall Township*, 33 Pa.Cmwlth. 162, 380 A.2d 1322, 1324 (1977), a Township's taking was upheld because rather than being arbitrary, the record demonstrated that it was "carefully planned and painstakingly thought out with a view toward present and future requirements." Moreover, the United States Supreme Court placed great weight upon the existence of a "carefully considered" development plan in order to rule that the taking in *Kelo v. City of New London*, 545 U.S. 469, 478, 125 S.Ct.

2655, 162 L.Ed.2d 439 (2005) was not pretextual, but for a proper purpose. Additionally, a plan to take must be tailored to the actual purpose or it will be overturned as excessive. This occurred in *Winger v. Aires,* 371 Pa. 242, 89 A.2d 521 (1952), when our Court held that a taking of 55 acres for the public purpose of building a school was an abuse of discretion because it was excessive for its purpose. *Id.* at 523 (internal citations omitted). Clearly, evidence of a well-developed plan of proper scope is significant proof that an authorized purpose truly motivates a taking.

The Township's authorized public purpose is recreation. 53 P.S. § 67201. Therefore, our inquiry in this appeal is focused on whether or not the Commonwealth Court was correct in affirming the trial court's conclusion that the Township's true purpose was recreation and that the Township properly invoked this purpose in order to have the authority to take the Stone Farm.

This Court will leave undisturbed the factual findings made by the trial court. But, as a matter of law, we conclude that these findings do not support the legal conclusion that the true purpose of the taking was for recreational use. Because the law requires that the true purpose of the taking be recreational, it is not sufficient that some part of the record support that recreational purposes were put forth. But rather, in order to uphold the invocation of the power of eminent domain, this Court must find that the recreational purpose was real and fundamental, not post-hoc or pre-textual.

The trial court first erred in stating that the long-range goal of the Township's Recreation, Parks and Open Space Plan ("Plan") was to acquire the Stone property for recreational purposes because the evidence of record does not substantially support this conclusion. The record reveals that the Township's Plan was adopted in 1991 in response to a county Open Space Program. (Addendum to Plan at 7.)[5] The Plan sets forth a list of new goals which were deemed "necessary." Specifically the Plan stated that a necessary goal was to (1)

5. Exhibit 1 of the Deposition of Joseph Wenda.

seek ways to acquire properties to preserve in open space as critical natural environment; (2) maintain and upgrade existing park and recreational facilities; and (3) protect the Township's remaining valuable agricultural resources. (Middletown Township Resolution No. 98–08R.) It is significant that the Plan specifically discusses the acquisition of property for the purpose of preserving open space, whereas recreation is contemplated only for *existing* parks and facilities. The Plan then identifies agricultural resources, stating that, "The remaining farmland in Middletown is a productive resource, contributing to the local economy, maintaining groundwater recharge areas, providing scenic open space, and enhancing the diversity and character of the community." (Plan at 4.) The Plan identifies four large farm tracts for "potential preservation," including the Stone Farm. The Plan discusses the Stone farm exclusively in terms of its agricultural and open space value. (Plan at 10.) Notably, there is no proposed recreational use related specifically to the Stone property. Therefore, the Plan offers no support for the proposition that the Township's fundamental purpose in exercising its eminent domain power was for the authorized purpose of recreation, and the trial court erred in concluding otherwise.

The trial court's second conclusion is in error because it disregards the law with respect to a public purpose and the proper scope of a taking, and is therefore, an abuse of discretion. The trial court found that the Township had no specific plan for the property, but that various recreational options had been considered. The trial court erred in deciding that these proffered options were proper and that they support an assertion that the true purpose of the taking was recreational. The first option mentioned, to allow Mr. Stone to continue to farm the land, would invalidate the taking because of the Fifth Amendment requirement that a condemnation serve a public purpose. To condemn the land so that Mr. Stone could commercially farm it, thereby reaping a profit from land owned and maintained by the Township, serves a purely private, and thus, unconstitutional interest. *See Winger, supra.* The stated intent of re-instituting the Celebration

of Lights crosses into unauthorized territory as well. The record reveals that the Board of Supervisors testified that they wanted to use a portion of the Farm to provide an alternative entrance in the event that they choose to resurrect a Celebration of Lights that was previously held in a neighboring park. (Dep. of Mel Kardos at 15–16; Dep. of Joseph Wenda at 16; Dep. of John Burke at 20.) However, the Township is limited to taking only what land is necessary to serve its purpose, and certainly 175 acres is excessive to meet the purpose of creating a second entrance to a neighboring park *if* the Township should decide that *in the future* it would like to reinstitute a town celebration there. *See Winger, supra.*

The last option for use of the land found by the trial court was that the Township might develop recreational uses for the remainder providing passive recreation. The record is devoid of any suggestion that the Township has considered, let alone created, such a plan. (Dep. of John Burke at 18–20; Dep. of Joseph Wenda at 30). As stated above, the record demonstrates that the Stone farm came to the attention of the Board of Supervisors at a public meeting due to a court order which partitioned the farm into four parcels. Discussion was centered on a concern that the smallest parcel would be developed, and the Board voted to condemn the entire property two weeks later. The next day the chair of the Board spoke to the Bucks County Courier Times, stating that although Mr. Stone would be free to continue farming the land, the Township wanted to acquire the farm to preserve it as open space in order to prevent its development. It is notable that the record reflects that at the time the Township Supervisors acted to invoke the power of eminent domain, they did not discuss the source of their authority to take or note that recreation was the primary purpose authorizing the decision to invoke the power of eminent domain.

Because this Court concludes that the Township took the land for purposes outside its limited authority to do so, the last statement of the trial court, that the inevitable consequence of preservation does not invalidate the condemnation

of the property for recreational purposes, becomes irrelevant. Although this proposition might be true, to the extent that a lack of power for the Township to take under the Lands Act does not preclude the Township from exercising its power under the Township Code, it still remains that a condemnation must flow from the authority to exercise eminent domain.

It is clear that in order to invoke that power, it was incumbent upon the Township to identify the fact that it could take for a recreational purpose and to take action to effectuate that purpose. Further, as stated previously, precedent demonstrates that condemnations have been consistently upheld when the taking is orchestrated according to a carefully developed plan which effectuates the stated purpose. *See School District of Pittsburgh, Pidstawski* and *Kelo, supra.* Anything less would make an empty shell of our public use requirements. It cannot be sufficient to merely wave the proper statutory language like a scepter under the nose of a property owner and demand that he forfeit his land for the sake of the public. Rather, there must be some substantial and rational proof by way of an intelligent plan that demonstrates informed judgment to prove that an authorized public purpose is the true goal of the taking.

The record does not support any finding of a condemnation proceeding informed by intelligent judgment or a concrete plan to use the Stone farm for the authorized purpose of recreation, and therefore, this Court finds that the Commonwealth Court erred in affirming the trial court which abused its discretion by overruling the preliminary objections to the taking. Accordingly, the Order of the Commonwealth Court is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion. Jurisdiction relinquished.

Former Justice NEWMAN did not participate in the decision of this case.

Justice CASTILLE joins the opinion.

Justice SAYLOR files a concurring opinion in which Justice BALDWIN joins.

Justice BAER files a concurring opinion.

Justice EAKIN files a dissenting opinion.

Justice SAYLOR, concurring.

I join the majority opinion, subject only to a few modest differences. Primarily, I do not regard the finding that a taking is for recreational purposes as a pure conclusion of law. *See* Majority Opinion, *op.* at 618, 939 A.2d at 338. Rather, I believe that there is a substantial factual dynamic, and therefore, I would treat it as a mixed question of fact and law. I am fully in line, however, with the majority's central conclusion that a more concrete plan is required to support a taking for recreational purposes than was put into place in this case, at least as reflected in the record presented.

Justice BALDWIN joins this concurring opinion.

Justice BAER, concurring.

I concur with the Majority that the Commonwealth Court erred in its determination that Middletown Township had authority to take the lands of Joseph Stone by eminent domain. Rather than premising my conclusion on the factual underpinnings of the decisions reached by the courts below, my determination derives from a conflict between the Second Class Township Code,[1] which grants townships the power to take lands for recreational purposes, and the Open Space Lands Act,[2] which prohibits townships' acquisition of land through the exercise of eminent domain. After construing the relevant provisions *in pari materia* and cognizant of the requirement that statutes granting the power of eminent domain must be construed strictly, *see* 1 Pa.C.S. § 1928(b)(4), I conclude that a township's power to acquire land for recreational purposes under the Second Class Township Code

1. Act of May 1, 1933, P.L. 103, No. 69, as amended, 53 P.S. § 67201

2. Act of Jan. 19, 1968, P.L. (1967) 992, as amended, 32 P.S. §§ 5001, *et seq.*

applies only to takings outside the ambit of the Open Space Lands Act. I therefore do not believe we need to review the factual conclusions of the courts below.

Unlike the Majority, I conclude that the relevant provisions conflict. I believe that the statutes must be read *in pari materia* because they "relate to the same persons or things or to the same class of persons or things." 1 Pa.C.S. § 1932. The Open Space Lands Act and § 2201 of the Second Class Township Code both authorize governmental units to acquire property. The Second Class Township Code, simply and unambiguously provides, "The board of supervisors may ... acquire lands or buildings by lease, gift, devise, purchase or by the exercise of the right of eminent domain for recreational purposes and construct and equip facilities for recreational purposes." 53 P.S. § 67201. The Open Space Lands Act is a more complex statute applicable to many types of governmental units; however, as it is relevant to this case, it empowers local governmental units to "acquire any interest in real property situate within its boundaries by purchase, contract, condemnation, gift, devise or otherwise." 32 P.S. § 5005(c)(1). The General Assembly dictated a number of purposes for which governmental units may acquire property under the Open Space Lands Act, many of which are consistent with recreational purposes. 32 P.S. § 5005 (providing for the acquisition of property for the protection of natural or scenic resources, the protection of scenic areas for public visual enjoyment from public rights of way, and the preservation of sites of historic, geologic or botanic interest). The Open Space Lands Act however forbids local governmental units, such as second class townships, from "exercising the power of eminent domain in carrying out the provisions of this Act." 32 P.S. § 5008.

Obviously, the statutes do not apply to the same class of persons or things in all situations. For example, the Open Space Lands Act will have little relevance to the acquisition of property for the construction of basketball and tennis courts or swimming pools, which would clearly fall under the grant of authority encompassed by the Second Class Township Code.

However, there are innumerable situations where open space and recreational purposes overlap. Clearly, many large parks would serve both recreational purposes under the Second Class Township Code by way of trails, lakes, and picnic areas, and yet serve the purposes of the Open Space Lands Act through the preservation of forests, watersheds, and natural and scenic resources. Indeed, the Township's own Declaration of Taking exemplifies the overlap between the statutes: "The purpose of the condemnation is to acquire a fee simple interest to the [Farm] for recreation and open space purposes." Declaration of Taking, R.R. at 24a. Accordingly, I conclude that the two statutes are *in pari materia*, at least as applied to second class townships' exercise of the right of eminent domain, and thus must be construed as one cohesive statute, giving effect to all the provisions. 1 Pa.C.S. §§ 1921(a), 1932.

The parties have presented conflicting arguments regarding which of the two statutes controls the situation at bar. Clearly, both statutes cannot apply to this situation because the application would result in contradictory outcomes. This Court simply cannot conclude that the law both authorizes and prohibits the exercise of eminent domain in this case. 1 Pa.C.S. § 1922(1) ("[T]he General Assembly does not intend a result that is absurd, impossible of execution or unreasonable."). Accordingly, we must harmonize these provisions in a way that honors the legislative intent of both statutes.

Considering the statutes *in pari materia*, I conclude that the Second Class Township Code's provision for the use of eminent domain to acquire land for recreational purposes only applies where the Open Space Lands Act's prohibition is inapplicable. Unlike the Majority's broad interpretation of the Second Class Township Code as encompassing "any legitimate recreational purpose," Maj. Op. at 609, 939 A.2d at 333, I conclude that the rules of statutory construction require a narrow interpretation of the term "recreational purposes" because it is a statute granting the power of eminent domain, which must be construed narrowly under 1 Pa.C.S. § 1928(b)(4). Accordingly, "recreational purposes" under the

Code's grant of eminent domain authority must be defined in opposition to the situations where the legislature has expressly prohibited a township's exercise of eminent domain under the Open Space Lands Act. Thus, "recreational purposes" under the Second Class Township Code are the subset of generic recreational purposes that do not overlap with open space purposes.

As the Township in this case expressed its desire to take the property for open space purposes, as well as recreational purposes, I would hold that the land falls outside the purview of the Second Class Township Code's grant of the power of eminent domain for recreational purposes. Accordingly, I would conclude that the lower courts erred in applying the Second Class Township Code, and that the Township did not have legal authority to take the Farm.

Justice EAKIN, dissenting.

Relying on the Township's Recreation, Parks, and Open Space Plan and the depositions of former members of the Township's Board of Supervisors, the trial court found the record revealed the ultimate goal for the Farm was recreational in nature, stating, "the condemnation purpose was in fact for recreation uses . . . ." Trial Court Opinion, 12/3/04, at 5. On appeal, the Commonwealth Court concluded, "The evidence supports the finding that the Township condemned the Property for recreational uses. In particular, two witnesses testified to a use of the Property as an extension of an existing, adjacent public park. Also, use of the Property for future recreational purposes was part of an established long-term plan." *Middletown Township v. Lands of Stone*, 882 A.2d 1066, 1072 (Pa.Cmwlth.2005).

Using our proper standard and scope of review,[1] the above facts are more than sufficient to support the trial court's

---

1. The majority properly states that in reviewing a trial court's decision regarding preliminary objections to a declaration of taking, an appellate court's standard of review is limited to determining whether the trial court abused its discretion. Majority Op., at 613 n. 3, 939 A.2d at 335 n. 3 (citing *Denes v. Pennsylvania Turnpike Commission*, 547 Pa. 152, 689 A.2d 219, 222 (1997)). It is not for an appellate court to determine whether it would have reached the same conclusions as the trial court;

factual and legal conclusion that the central and defining purpose of the condemnation was recreational. Whether this Court, having heard none of the witnesses, believes the Township's declaration of taking was a ploy to carry out the prevention of development is irrelevant; the only relevant inquiry is whether the record supports the trial court's conclusion. I must respectfully disagree with the majority's determination that appellant met his heavy burden of establishing the Township was not authorized under the Second Class Township Code to exercise eminent domain under the circumstances presented. *See In re Condemnation by School District of Pittsburgh,* at 46 (condemnees' burden of proving abuse of discretion is heavy one).

I would affirm the Commonwealth Court's decision upholding the trial court's order dismissing appellant's preliminary objections.

if the court's findings are supported by the record, they should not be disturbed. *Denes,* at 222; *In re Condemnation by Township of Heidelberg,* 58 Pa.Cmwlth. 321, 428 A.2d 282, 284–85 (1981). In addition, a condemnees burden of proving the trial court committed an abuse of discretion in dismissing his challenge to a condemnation is a heavy one. *In re Condemnation by School District of Pittsburgh,* 430 Pa. 566, 244 A.2d 42, 46 (1968).