DISSENTING OPINION BY
JUDGE HEARTHWAY
Because Burton Adams (Mr. Adams) and Joanne Adams (together, Adamses) already have access to their property, albeit not the portion of> their approximately 231 acre parcel they desire to access for the purpose of constructing a home or cabin at the crest of his property, and because the Adamses have not established that the public is the primary and paramount beneficiary of the private road they seek to open, I respectfully dissent.
The Board of View (Board) found that the Adamses’ land was effectively landlocked because the only other means of access to the crest of their land “would be by way of an approximately one mile long *596 unimproved logging trail located off of Star Road that involved an extremely steep upward and winding 1000 foot incline .,(Board’s 8/31/15 Findings No. 12(h).) The Board observed the access via Star Road to be “significantly more narrow and inhospitable than the route from Holly Hill to the Roadway” and stated improvement of the logging trail would be “prohibitively expensive and arduous for the Petitioners’ [sic] to have effectively and efficiently constructed and would not be financially feasible or cost-effective.” (Board’s 8/31/15 Findings No. 12(h).) The Board found the “Roadway to be the shortest, safest, most convenient, accessible and reliable current means of access ....” (Board’s 8/31/15 Findings, No. 22.) Accordingly, the Board concluded that the Adamses should be granted access over Corl’s land “for the stated purpose of constructing a seasonal cabin ....” (Board’s 8/31/15 Findings, No. 24.) It is apparent from the Board’s decision that the Board was evaluating the Adamses’ ability to access the top portion of their property by means of the logging trail.[1]
While initially the parties agreed that the site visit would constitute the basis for the Board’s decision and waived a hearing, the trial court remanded the matter to the Board to create a record. (R.R. at 42a.) The testimony and record on remand cannot be ignored.
Significantly, Mr. Adams admitted that Star Road abuts his property at the base and that he has access to the edge of his property via Star Road. (R.R. at 69a-70a, N.T. at 30-31.) The Majority even clarifies that “[a]pproximately one-half mile after it leaves Route 87, Star Road meets the southern and eastern boundaries of the Adamses’ parcel.” (Majority opinion (op.) at 587.) Mr. Adams, however, is dissatisfied with the location of his current access, which he describes as “a thousand foot short in elevation and a mile to get up to where I want to be.” (R.R. at 69a, N.T. at 30.) Mr. Adams explained that he wanted to be at the top of the mountain in order to build a cabin where “it has a good view.” (R.R. at 61a, N.T. at 22; see R.R. at 72a, N.T. at 33.) Mr. Adams admitted he has “no problem” getting to his property “down below,” but stated that it is from there on up that it is over a mile long and very hazardous.[2] (R.R. at 70a, N.T. at 31.) Additionally, while Mr. Adams described Star Road as an “abandoned” road, he testified that Star Road is now a “private road” that reverted back to the previous owners, which includes the Adamses. Significantly, Mr. Adams stated that he is *597 able to use Star Road.[3] (R.R. at 67a-68a, N.T. at 28-29.) Indeed, the parties and the Board drove to the Adamses’ property on Star Road when the Board conducted its view. (R.R. at 66a, N.T. at 27-28; R.R. at 82a, N.T. at 43.)
In essence then, what the Adamses seek is a second private road from which to access a different portion of their property. Thus, the question this Court is faced with is whether the Private Road Act[4] compels another landowner to open up his private land to allow an adjoining landowner access to a specific desired portion of his or her property when that landowner already has access to his property. Relevant precedent, however, indicates that a board of view should evaluate whether one has access to one’s property rather than whether one has access to a desired portion of one’s property, such as the crest of the mountain, as the Board did here. Additionally, as will be explained later, the Adamses are not entitled to open a private road over Corl’s property because they have not established that the public is the primary and paramount beneficiary of the opening of the Roadway, as required by our Supreme Court’s decision in In re Opening a Private Road for Benefit of O’Reilly, 607 Pa. 280, 5 A.3d 246 (2010).
Section 12 of the Private Road Act authorizes the opening of a private road if it “shall appear by the report of the viewers to the court directing the view, that such road is necessary ...” 36 P.S. § 2732. The test is necessity, but the Private Road Act does not define this term. In re Packard, 926 A.2d 657 (Pa. Cmwlth. 2007).
While the [Private Road]- Act does not require an absolute necessity, such as being completely landlocked, the mere inconvenience in the use of an existing road is not enough. Pocopson Road, 16 Pa. 15, 17 [1851]. The existing road must be of limited privilege, Stewart’s Private Road, 38 Pa.Super. 339, 342 [1908], or “extremely difficult and burdensome” in its use....
Application of Little, 180 Pa.Super. 555, 119 A.2d 587, 589 (1956).
The Majority agrees with the Board and the Adamses that In re Laying Out and Opening Private Road in Sullivan Township, Tioga County, 964 A.2d 495 (Pa. Cmwlth. 2009), provides the most relevant instruction. Additionally, the Majority relies on In re Private Road in Union Township, 148 Pa.Cmwlth. 522, 611 A.2d 1362 (1992), which was not cited by either party. While at first glance, these cases may appear to be on point, I find them to be distinguishable.
In Sullivan Tmmship, the only existing road providing access to the landowner’s property was the proposed private roadway. The Board viewed several alternative accesses, none of which actually existed *598 but were subject to an easement, and found that none was feasible due to topographical and cost concerns. The board of view found that the alternative ¡access-did not effectively provide access to any- part of the landowner’s property. The board of view’s focus was access to the landowner’s property, not access across his property. Here, the Board mistakenly focused on the cost and topography concerns associated with accessing a specific portion of the Adamses’ property by means of a logging trail which runs across the Adamses’ property.[5] . -.
And, while Union Township appears at first glance to allow one to have a private road opened in order to access a specific portion of his property, that case is different from the case before us, both factually and procedurally. In Union Township, the landowner had access to the western portion of his property but alleged that the eastern portion of the property was landlocked because the property was divided by a ravine 80 to 100 feet deep and several hundred feet wide. Although the topography of the Adamses’ property presents challenges for accessing the crest of the property, Mr. Adams admitted that he has walked up to the top of his property. (R.R. at '70a-71a;, N.T. at 31-32.) The facts here as a matter of law are not comparable to Union Township where cine portion of the property was truly landlocked and 'physically separated from another portion. Additionally, procedurally, on appeal to this Court, the question of necessity was not at issue in Union Township.[6]
In contrast to those case, in Mazzante v. McClintock, 976 A.2d 648 (Pa. Cmwlth. 2009), we addressed a situation factually similar to the matter before us, and notably ruled it was distinguishable from Union Township. In Mazzante, this Court upheld the denial of a petition for appointment of a board of view to open a private road where the landowner already had access to his property but sought to open a private road for access across his property to a different part of his property. The landowner stated that he needed the proposed access so that he and his contractors could get to a specific portion of his property without traversing two difficult and dangerous logging roads in order to build a cabin. This Court upheld the denial of a petition for appointment of a board of view. In doing so, we ruled that the facts in Mazzante as a matter of law were not comparable to Union Township in which one portion of the property was truly land; locked and separated from another portion. Mazzante, 976 A.2d at 655. We noted that the landowner in Mazzante “admitted to a degree of access across his property but wishe[d] to avoid the expense that would be required to improve that access.” Mazzante, 976 A.2d at 655. We held that such desires did not rise to the “strictest necessity” required under the Private Road Act. Id.; see also Soska v. Bishop, 19 A.3d 1181 (Pa. Cmwlth. 2011) (upholding *599 denial of a petition to open a private road for failure to establish strict necessity where petitioners admitted that a driveway on their property provided access from their residence to the public road but they found the use of their driveway to be burdensome and inconvenient in its current condition). Further, we stated that precedent does “not establish a principle that whenever an owner alleges that a road across his or her property is difficult or burdensome to use that the owner has shown' entitlement to appointment of a board of view under the [Private ’ Road] Act.” Mazzante, 976 A.2d at 654 (emphasis in original).
While the Adamses- may be entitled to access to their property, they are not entitled to the access of their choice. The Board overlooked the Adamses’ admitted access to their property via Star Road, and instead, focused on the access across their property via the logging trail to. the crest of their property. The Board evaluated whether the Adamses "have access over their property to a specific portion of their property, - rather than determining whether a private road' is necessary for access to the Adamses’ property. Such misplaced focus constitutes an error of law and an abuse of discretion. Additionally, the Board, in concluding that the Adamses should be granted access over, Corl’s property, found that the “Roadway to be the shortest, safest, most convenient, accessible and reliable current means .of access ....” (Board’s 8/31/15 Findings No. 22.) However, whether something is the “shortest, safest, most convenient, accessible and reliable current means of access” also is not the correct legal standard. The Board incorrectly substituted a new legal standard for the standard of necessity as required by the Private Road Act. This, too, was an error of law.
The Majority states, “Star Road may allow the Adamses to reach the base of their property, located in the valley, but it provides no meaningful access to the mountainous part, which comprises most of their 231-acre parcel.” (Majority, op. at 592-93.) I respectfully submit that “meaningful” access also is not the correct legal standard under the Private Road Act, which requires necessity. Nonetheless, even accepting. the Majority’s statement for the sake of argument, the top or mountainous portion of the Adamses’ property is “landlocked” only by the Adamses’ own property. The fact that the Adamses have difficulty navigating within them own property does not rise to the strictest necessity allowing them to open a private road over another’s property. The effect of the Board’s and Majority’s decisions is to allow one to establish necessity simply by showing one lacks “meaningful” access to all corners of his property. This is a dangerous precedent that erodes private property rights.
The Private Road Act must be strictly construed. Soska. Additionally, “‘taking private property for private use is not favored.’ ” Soska, 19 A.3d at 1188 (quoting In re Private Road in Speers Boro II, 608 Pa. 302, 11 A.3d 902, 906 (2011)); see also In re Sunoco Pipeline, L.P., 143 A.3d 1000, 1020 (Pa. Cmwlth. 2016) (Brobson, J. dissenting) (stating “[pjrivate property rights have, long been afforded especial protection in this Commonwealth”). I simply do not believe the precedent interpreting the Private Road Act authorizes a board of view and this Court,, under these circumstances, to allow a landowner to take a neighbor’s private property for the purpose of acquiring additional, more convenient access to another portion of his property.
Moreover, even where it is -determined that one is effectively landlocked, that.no *600 longer ends the inquiry, as it did when Sullivan Township and Union Township were decided. As a result of our Supreme Court’s decision in O’Reilly, a landowner who seeks to take another’s property in order to open a private road pursuant to the Private Road Act must now also establish that “the public is fairly regarded as the primary and paramount beneficiary” of any such taking. O’Reilly, 5 A.3d at 258. I agree with the Majority that the relevant inquiry is whether opening the Roadway to the Adamses will benefit the public. Therefore, Chesapeake’s use is irrelevant and cannot, as a matter of law, support a finding of a public benefit, as the Board and trial court concluded.
With respect to the remaining proffered public use, allowing hunters to access the Adamses’ property based on the Cooperative Agreement with the Pennsylvania Game Commission (Commission), I find the record to be insufficient to support a finding that the public is the primary and paramount beneficiary of the opening of the Roadway. The Board made no findings concerning the use of the Adamses’ property by hunters. In fact, the Board deemed this evidence to be irrelevant because the Adamses did not enroll their property with the Commission until December 15, 2014, or about twenty-two months after they filed their petition to open the. Roadway. (Board op. at 5, n. 5.) Notably, the Adams-es also did not enroll their property with the Commission until after the Board’s initial decision and after Corl filed his exceptions, which included an assertion that no public benefit was found, and after the trial court ordered that the matter be reopened for the purpose of establishing a record for potential appeal purposes. (R.R. at 84a, N.T. at 45; see R.R. at 27a; R.R. at 42a, N.T. at 3.)
Moreover, “the true purpose must primarily benefit the public.” Middletown Township v. Lands of Stone, 595 Pa. 607, 939 A.2d 331, 337 (2007) (emphasis in original). The evidence is clear that the use of the Adamses’ property by hunters is de minimis, and therefore, the public cannot fairly be regarded as the primary and paramount beneficiary of the opening of the Roadway. Rather, the primary and paramount beneficiary of the opening of the Roadway would be the Adamses, for the stated purpose of building and accessing a cabin at the crest of the mountain with scenic views. The Majority broadly construes the phrase primary and paramount beneficiary to include the hunting here. However, because the opening of a private road is in derogation of a private right, this Court must strictly construe the Supreme Court’s mandate that the public must be the primary and paramount beneficiary of the opening of a private road. See O’Reilly (evaluating proceedings under the Private Road Act pursuant to eminent domain principles); Cf. Middletown Township, 939 A.2d at 337 (stating that “the exercise of the right of eminent domain is necessarily in derogation of a private right, and the rule in that case is that the authority is to be strictly construed”)(internal quotations and citations omitted).
I also respectfully disagree with the Majority’s statement that the “extent of a taking in a Private Road Act case is relevant and should be a factor when considering the primary public purpose required by O’Reilly.” (Majority op. at 595.) This statement conflates the concepts of determining, in the first instance, whether there was a taking, and if so, the amount of compensation owed. A taking is a taking. The extent of the taking is relevant only to determine the amount of compensation owed.
This Court is bound to follow our Supreme Court’s decision in O’Reilly. While it has been said that O’Reilly II “for all *601 intents and purposes rendered the [Private Road] Act constitutionally unenforceable,”[7] notably, the legislature has not amended the Private Road Act in response to the Supreme Court’s decision. O’Reilly II “establishes a framework for balancing the competing constitutional interests” of property owners.[8] “Requiring that the public must be the ‘primary and paramount beneficiary of the taking’ ... is an important Constitutional limitation on a private citizen’s ability to take neighboring property.”[9]
The Majority’s ruling that allowing hunters to access a section of one’s property means that the public is the primary and paramount beneficiary is too broad of an interpretation. This broad interpretation, combined with existing case law and the Majority’s holding which allows one to open a private road to access a specific portion of one’s property, sets a significant precedent. I respectfully -submit that the Majority’s ruling erodes private property rights for personal convenience and a tenuous public benefit. Under the Majority’s holding, had the situation been reversed, Corl could have sought to open a private road across the Adamses’ property to get to the section of Corl’s property where the gas pad needed to be located for “a public purpose.” See Westrick v. Approval of Bond of Peoples Natural Gas Co., 103 Pa.Cmwlth. 578, 520 A.2d 963 (1987) (stating the transportation and supply of natural gas constitute a public use). Under the majority’s rulipg these situations are arguably no different.
Accordingly and respectfully, I would reverse.

. The Adamses admit in their brief that the alternative means of access evaluated by the Board is actually all on their land, (Adamses’ brief at 4.)
I respectfully submit that the Majority’s statement that the Board found that access over Star Road itself is " ‘more narrow and inhospitable than the route from Holly Hill Road’ ” is a misinterpretation. (Majority opinion at 587-88 quoting Board Report, 8/31/2015 at 6.) Instead, the Board is actually referring to the logging trail. The Board explained:
... the only other means of access to their land that was identified to the Board would be by way of an approximately one mile long unimproved logging trail located off of Star Road that involved an extremely steep upward and winding 1000 foot incline to the crest of the Petitioners’ land. Access via Star Road.
(Board’s 8/31/15 Findings No. 12(h), emphasis added.) The phrase "access via Star Road” refers to the access in the preceding sentence, i.e., the logging trail located off of Star Road.

. When asked whether there would be any problem building the house down below, Mr. Adams replied, "I don’t want to build it down below. I want to build it up on top.... I could build a house a lot of places but I want to build it on top of the mountain.” (R.R. at 72a, N.T. at 33.)

. The Majority states the abandonment of Star Road is not a fact in dispute. This is misleading. While Mr. Adams said Star Road was “abandoned,” and Corl also used that term in his exceptions, it is unclear what is meant by the term "abandoned,” and the evidence is incomplete in this regard. Mr. Adams’ testimony concerning Star Road’s status and his ability to use Star Road is consistent with the law of this Commonwealth. When the public’s right to use a road is validly terminated, it is established as a private road with a right of access by the abutting owners, and the property consisting of the road reverts automatically and simultaneously to the abutting owners. In re City of Altoona; cf. Schantz v. Bahry, 43 A.3d 536 (Pa. Cmwlth. 2012) (finding that where township ordinance vacated road as a public road and established it as a private road, landowner had the right to access private road that crossed neighbor’s land but access was limited to only that area within the road’s right-of-way).

. Act of June 13, 1836, P.L. 551, as amended, 36 P.S. §§ 2731-2891.

. It was only improvement of the logging trail across the Adamses’ property that the Board found to be prohibitively expensive' and arduous. The Majority states that Corl did not offer rebuttal testimony regarding the cost or alternative access, but Corl did not Corl have to do so. It wás the Adamses' burden to prove necessity; however, Adams admitted he had "no problem” accessing his property. (R.R. at 70a, N.T. at 31.) Contrary to the Majority’s implication, the burden did not shift to Corl.

. In Union Township, the issues before this Court were (i) whether the doctrines of collateral estoppel and res judicata barred the private road proceedings by virtue of a prior equity action wherein the landowner sought an easement by prescription, which was granted, and an easement by necessity, which - was denied and (ii) whether the owners of the property on which the road was being opened were entitled to a jury trial on the issue of damages.

. In re O’Reilly, 100 A.3d 689, 698 (Pa. Cmwlth. 2014) (O’Reilly II) (Leadbetter, J. concurring).

. Id. at 699 (Cohn Jubelirer, J. concurring).

. Id. I also note that in O’Reilly, the landowner alleged that he was landlocked as a result of the Commonwealth's prior exercise of eminent domain to build an interstate highway. The Supreme Court remanded the matter, noting that relevant details were not developed concerning the purported interrelationship between the Commonwealth's exercise of eminent domain and the landowner’s subsequent invocation of the Private Road Act.