Susie Clark v. The Board of County Commissioners of the County of Mitchell et al.

No. 13,692.   (77 Pac. 284.)

SYLLABUS BY THE COURT.

1. Practice, Supreme Court—*Extension of Time for Service of Case-made.* When the court or judge orders an extension of time for serving a case-made under the proviso to section 1 of chapter 380, Laws of 1903, the requirements of the law are satisfied if the order of extension be filed with the clerk of the court. The filing of such order constitutes "notice of extension."

2. CONSTITUTIONAL LAW—*Eminent Domain—Act of 1874.* Chap
ter 112, Laws of 1874 (Gen. Stat. 1901, §§ 6053–6055), entitled "An
act to provide for opening private roads or highways," is uncon-
stitutional for the reason that it authorizes the taking of private
property for private use.

Error from Mitchell district court; R. M. PICKLER,
judge. Opinion filed June 11, 1904. Reversed.

*Frank A. Lutz,* for plaintiff in error.

*J. E. Tice,* for defendants in error.

The opinion of the court was delivered by

SMITH, J. : A motion to dismiss the petition in er-
ror has been made on the ground that the provisions
of section 1, chapter 380, of the Laws of 1903, respect-
ing the extension of time for serving a case-made, have
not been followed. Judgment was entered on April
20, 1903. On that day the time to make and serve a
case-made on defendants in error was extended until
August 1, following. The latter were allowed until
August 10 to suggest amendments, the case to be
settled upon five days' written notice by either party.
Service was had on defendants in error June 29, 1903,
and the case was settled and signed on July 17, both
parties appearing by their attorneys. No amend-
ments were suggested. The point is made that the
record does not show that the notice of extension was
filed with the clerk of the district court. Section 1 of
chapter 380, Laws of 1903, requires that within ten
days after the entry of judgment the case-made or a
copy of it be served on all the adverse parties or de-
livered to the clerk of the court. This section con-
tains the proviso " that the court or judge before whom
the case was tried may, on motion, order an exten-
sion of time for serving such case-made, which notice

of extension shall be filed with the clerk of such court."

It is evident that the word "notice" used above should be read "order," and that the legislature intended the order of extension to be filed with the clerk of the court. If, however, the words of the statute must be taken literally, then we think the order of extension made by the court or judge, and filed with the clerk, satisfied the requirement directing that "notice of extension" be given.

The case on its merits involves the constitutionality of chapter 112, Laws 1874 (Gen. Stat. 1901, §§ 6053–6055), which is entitled "An act to provide for opening private roads or highways." It reads:

"SECTION 1. That when any landholder, who has no road or highway, desires the benefit of a road or highway, such person may petition the county commissioners of the county in which such person resides to open a private lane or road to a public highway, when it shall be the duty of said commissioners to appoint three disinterested viewers to view and open a lane or road by the nearest and most practicable route to an established highway: provided, that said lane or road shall follow or run parallel with some section or subdivision line; said road not to exceed two rods in width.

"SEC. 2. Said viewers shall assess all damages, when damages are claimed, and the road shall be declared open when the damages, if any, are paid.

"SEC. 3. That no portion of the expense of viewing and locating roads under this act shall be chargeable to the county or state, but shall be paid by the person for whose benefit the road is located."

Under the express terms of this law a landowner may petition the county commissioners to "open a private lane or road to a public highway." The title of the act restricts its operation to private highways, and, in view of chapter 108, Laws of 1874, now incor-

porated into chapter 89, General Statutes of 1901 (§§ 6016–6072), providing for the opening of public roads, passed at the same session of the legislature, it is obvious that the later law was intended for purposes which could not be accomplished under the prior act.  Sectipn 29 of chapter 108, Laws of 1874 (Gen. Stat. 1901, § 6044), reads as follows :

"SEC. 29.  That whenever the premises of any person in this state shall be so completely surrounded by adjoining lands, the property of other persons, as to be without access to any public highway, then such person may petition the board of county commissioners of the county in which such premises lie for a road through some portion of the adjoining lands, and the board shall, on the presentation of such petition, proceed in accordance with the provisions of the foregoing sections to lay out such road, make returns of plats, and allow damages, if any should be held or allowed, provided said road shall not exceed twenty-five feet in width, and be laid out upon the section or half-section lines when practicable."

Under the above section of the general road law, ample relief is afforded to a landowner whose premises are so completely surrounded by adjoining lands as to be without access to any public highway.  If his petition for a road be granted and the highway established, under the general law, it is public in character.

No necessity existed for the enactment of chapter 112, Laws of 1874, except for the purpose indicated by its title, which is to provide for opening private highways as distinguished from public roads.  The legislature emphasized the difference between private and public roads by the passage of the two acts.

Under section 10 of chapter 108, Laws of 1874 (Gen. Stat. 1901, § 6025), the county commissioners, upon

the coming in of the viewers' report, are prohibited from opening the road unless when opened it will be of *public utility*. Again, by section 18 (Gen. Stat. 1901, § 6033) all male persons between twenty-one and forty-five years of age, who have resided thirty days in the state, and who are capable of performing labor on public highways, are made liable to perform two days' work each year on the *public roads*, furnish a substitute, or pay $1.50 per day to the road overseer to be expended in repairs on the *public roads*. By section 20 (Gen. Stat. 1901, § 6035) a failure to perform the two days' work or pay the amount stated is declared to be a misdemeanor punishable by fine. Under the rules of construction applicable to penal laws, no person would be amenable to fine for refusal to do work in improving or repairing a road laid out under "an act to provide for opening private roads or highways," when the penalty for his default is found in a law applicable to public highways only.

We are asked to proclaim by judicial fiat that roads designated by the lawmakers as "private highways" are public in character. So to declare would be an aggressive and unwarranted invasion of the domain of legislation, from which courts are excluded. We are confined in jurisdiction and power to the field of interpretation of legislative acts. A law plain in its meaning, with a purpose clear and well-defined, without ambiguities, ought to rest secure from judicial distortion, leaving the responsibility for its failure to fulfil an expected object with its legislative creators.

A reference to section 3 of chapter 112, Laws of 1874, now under consideration, leaves no doubt of the personal and private nature of a road established under its authority. It is provided that no portion of the expense of viewing and locating the road shall be

chargeable to the county or state, "but shall be paid by the person *for whose benefit the road is located.*" This, in connection with the first section, which speaks of "a private lane or road," leaves no latitude for construing the language otherwise than according to its plain and obvious sense.

The case of *Lockerman v. Comm'rs of Chase Co.*, 27 Kan. 659, cited as authority by plaintiff in error, is somewhat confusing and difficult to understand. The learned justice who wrote the opinion had before him the Compiled Laws of 1879, where the two chapters— 108 and 112 of the Laws of 1874—are run together, making chapter 89 of the Compiled Laws of 1879. There is, however, in the opinion a citation, with seeming approval, of *Bankhead v. Brown*, 25 Iowa, 540, which is an authority of much weight on the question involved. The law passed on in the Iowa case was entitled "An act for the establishment of private roads in Iowa," enacted in 1886. It is found in a note at page 542 of the report, and does not differ materially from chapter 112, Laws of 1874, above quoted. In holding the law unconstitutional, as an attempt to appropriate private property for private use. Chief Justice Dillon said :

"If the road now in question had been established as a public road under the general road law (as we confess we do not see why it might not have been), there would, in our minds, be no doubt as to its validity, although it does not exceed a half-mile in length, and traverses the lands of but a single owner. For the right to take land for a public road, that is, a road demanded by the public convenience, as an outlet to a neighborhood, or, it may be, as I think, for a single farmer without other means of communication, cannot depend upon the length of the road, or the number of persons through whose property it may pass.

"With respect to the act of 1866, we are of opinion that roads thereunder established are *essentially private*, that is, are the private property of the applicant therefor, because,

"First. The statute denominates them *'private roads,'* and is entitled 'An act to provide for establishing private roads.' If the roads established thereunder were not intended to be *private*, and different from ordinary and public roads, there was no necessity for the act.

"Second. Such road may be established upon the petition of the applicant alone ; and he must pay the costs and damages occasioned thereby, and perform such other conditions as to fences, etc., as the board may prescribe.

"Third. The public are not bound to work or keep such roads in repair, and this is a very satisfactory test as to whether a road is public or private.

"Fourth. We see no reason, when such a road is established, why the person at whose instance this was done might not lock the gates opening into it, or fence it up, or otherwise debar the public of any right thereto."

To the same effect see *Blackman v. Halves*, 72 Ind. 515 ; *Wild v. Deig et al.*, 43 id. 455, 13 Am. Rep. 399 ; *Sadler v. Langham*, and *Moore v. Wright & Rice*, 34 Ala. 311 ; *Logan v. Stogsdale*, 123 Ind. 372, 24 N. E. 135, 8 L. R. A. 58 ; *Richards v. Wolf*, 82 Iowa, 358, 47 N. W. 1044, 31 Am. St. Rep. 501 ; *Dickey v. Tennison*, 27 Mo. 373 ; *Witham v. Osburn*, 4 Ore. 318, 18 Am. Rep. 287 ; *Varner v. Martin*, 21 W. Va. 534 ; *Healy Lumber Co. v. Morris*, 33 Wash. 490, 74 Pac. 681, 63 L. R. A. 820 ; Ell. Rds. & Sts. (2d ed.) § 192.

The case of *Masters v. McHolland*, 12 Kan. 17, relied on by counsel for defendants in error, does not support their contention. There the road was laid out under the provisions of chapter 89, General Stat-

utes of 1868, a general road law relating to public highways. The court said :

"Neither the findings nor the testimony show that this was other than a public road. Its condemnation was sought in the ordinary proceedings for condemning public roads. It was pronounced by both viewers and county board of public utility. The expense of opening is borne by the public. All damages assessed would have to be paid by the public. It affords one citizen at least a means of communication with the balance of community, and the balance of community a means of communicating with him."

A quotation is then made from *Bankhead v. Brown,* supra, to the effect that the taking of the land from one owner, necessary to establish a public highway to enable another to have an outlet to market, schools, and for other purposes, is not in a just sense the taking of private poperty for private use but for the general good.

There would be no difficulty in sustaining the court below if the road in question had been laid out and established under the general road law, and the road found to be of public utility. The legality of the acts of the viewers and county commissioners rests on a law which is in conflict with the fundamental rule that private property can be appropriated for public use only. It is true that the courts have expressed divergent views on the proposition involved. See *Sherman v. Buick,* 32 Cal. 241, 91 Am. Dec. 557, 585, and note, in which it was conceded that the legislature is without power to establish private roads in the sense that they are the property of particular individuals. The court then proceeded to declare that such roads are public, perverting the language of the lawmakers to a meaning directly opposite that expressed in their enactment. We are content in the

present case to rely on the sign to denote truly the thing signified, and not distort by strained interpretation plain and palpable legislative expression, or by far-fetched reasoning give to well-understood language a significance different from that conveyed by the words employed.

The judgment of the court below will be reversed, with directions to proceed further in accordance with this opinion.

All the Justices concurring.