5 A.3d 246

In the Matter of OPENING a PRIVATE ROAD FOR the BENE-FIT OF Timothy P. O'REILLY Over Lands of (A) Hickory on the Green Homeowners Association, and (B) Mary Lou Sorbara; Gregory E. Burgunder; Ann E. Cain; Don E. Cottrill & Norma J. Cottrill, H/W; Joseph K. Cupples; Bart V. Delcimmuto; James D. Dragoo & Linda J. Dragoo, H/W; Kimberly M. Fonzi; Brian J. Gallagher & Diane J. Gallagher, H/W; Dolores M. Gembarosky; Michael J. Gralish, Jr. & Virginia A. Gralish, H/W; James Battista; Jeffery W. Hutchens; Michael Steinberg; George E. Wilmot & Linda M. Wilmot, H/W; Harry J. Lee, Jr.; John G. Byrne; S. Greg Malone; Joseph V. Mazur & Kelly L. Poole; Thomas C. Schaal & Patty G. Schaal, H/W; Regis G. Niederberger & Kathleen C. Niederberger, H/W; Gordon J. Orr; Anne M. Paul; Thomas G. Porter & Melinda D. Porter, H/W; Joseph Alan Shrager; Eric H. Rittenhouse & Danielle L. Rittenhouse, H/W; Lisa A. Cusick; Jerome Schmier & Carol Falo, H/W; Nancy J. Huff; Marcus A. Spatafore & Kristin C. Spatafore, H/W; William E. Sprecher & Marcellene Sprecher, H/W, and Frank J. Sprecher & Agnes E. Sprecher,

H/W, Life Estate; Roxanne M. Squillante; Susan C. Stanko; Shanan R. Stewart; Gerald W. Danhires & Linda Danhires, H/W; Gregory Taylor; Gianna M. Yeckley; Dennis M. Zamerski & Noreen Zamerski, H/W; Betty B. Williams & Leon I. Williams (Co–Trustees); Micheline Stabile; William F. Pitzer; Janet Zewe; Franki R. Colangelo; Karen R. Billingham; Roman M. Hlutkowski; Virginia L. Knaus, Trustee Under Qualified Personal Residence Trust Agreement, Dated July 27, 2000; Joan L. Massella; Donna Durkan; Geraldine R. Altenhof; Aprajita Rathore & Ravi Ramamoorthy, H/W; James E. Spence & Kathy F. Spence, H/W; Tracy West Malone; Jennifer A. Callery; The Judith F. Koblitz Trust; Adrianna F. Viola; Dorothy D. Wagner; Spitzig Living Trust and William A. Spitzig and Marilyn J. Spitzig (Trustees); Sandra Jean Hanson; Thomas C. Skena; Zaraf Moshin; Paul W. Amic & Carole L. Amic, H/W; Margaret M. Showalter; James P. Flannery & Patricia C. Flannery, H/W; Deborah A. Gertz; Carol L. Schartner; John A. Udischas & Susan C. Udischas, H/W; Donna M. Bartko; Kyli J. Martin; Frederick Rapone Sr. & Roberta Rapone, H/W; Amy R. Solomon; Richard M. Buck & Barbara L. Buck, H/W; Arlene Lipton; William G. Eiler; Catherine M. Smith; David J. Carroll; Mildred K. Fincke; Margaret M. Cornellius; Joseph A. Testa & Margaret J. Testa, H/W; Candace L. Salvini; A. Whitney Lobdell & Roberta S. Lobdell, H/W; Ronald G. Bauer & Teresa L. Bauer, H/W; Anna Marie Cimarolli; Jor R. Palmer & Ann D. Palmer, H/W; Rita V. Frizlen; Joseph J. Astorino & Marilyn J. Astorino, H/W; Thomas S. Phillips; John A. Gercher; Naomi H. Patton; Stanley A. Hack & Christine E. Hack, H/W; Melissa J. Schiller & Melanie M. Schiller; John Schlater & Paulette Schlater H/W; William J. Garrity, Sr. & Patricia Ann Garrity, H/W; Archie L. McIntyre; Clarence Joseph Welter & Mara Welter, H/W; Lisbeth A. Dineen; Charles W. Fetrow & Margaret A. Fetrow, H/W; Jocelyn Breakwell, Mark A. Petrozza & Dorothy M. Petrozza, H/W; Jamie A. Brace, as their interests may appear.

Appeal of Hickory on the Green Homeowners Association, et al.

Supreme Court of Pennsylvania.

Argued Sept. 16, 2009.

Resubmitted Aug. 16, 2010.

Decided Sept. 30, 2010.

Kevin P. Allen, Esq., Thorp Reed & Armstrong, L.L.P., for Hickory on the Green Homeowner's Association, et al.

Howard Jonathan Bashman, Esq., for amicus curiae, Institute for Justice.

Karen R. Billingham, pro se.

Franki R. Colangelo, pro se.

Brian J. Gallagher, pro se.

Diane J. Gallagher, pro se.

Nancy J. Huff, pro se.

Jarrett L. Lasker, pro se.

Marilyn Marcovitz, pro se.

Richard Marcovitz, pro se.

Dwight David Ferguson, Esq., William P. Bresnahan II, Esq., John Francis Dwyer, Esq., William P. Bresnahan, Esq., Hollinshead, Mendelson, Bresnahan & Nixon, P.C., Pittsburgh, for O'Reilly, Timothy P.

Gordon J. Orr, pro se.

Kimberly Roston, pro se.

Candace Salvini, pro se.

Susan C. Stanko, pro se.

Gregory Taylor, pro se.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice SAYLOR.

In this appeal, we review the Commonwealth Court's determination that the Pennsylvania Private Road Act does not effect an unconstitutional taking of private property.

Under the law commonly known as the Private Road Act,[1] the owner of a landlocked property is permitted to petition the court of common pleas for the appointment of a board of viewers to evaluate the necessity of a private road to connect such property with the nearest public thoroughfare or private way leading to a public thoroughfare. *See* 36 P.S. § 2731. Upon a finding of necessity, the board will lay out a private road to cause the least damage to private property. *See* 36 P.S. § 1785. The Act requires the owner of the landlocked property to pay damages to persons over whose property the new road is built; the owner is then afforded exclusive use of the road. *See* 36 P.S. §§ 2736, 2761.

Appellee, Timothy O'Reilly, owns a property in South Fayette Township, Allegheny County, which, he relates, was landlocked as a result of the Commonwealth's exercise of eminent domain to build Interstate 79. In February 2004, Appellee commenced proceedings under the Act to open a private road to connect his property to Clubview Drive, a public road within the "Hickory on the Green" residential development. The proposed road would traverse land owned by Mary Lou Sorbara ("Sorbara") and the Hickory on the Green Homeowners Association ("Hickory on the Green"). Appellants, Sorbara, Hickory on the Green, and its constituent property owners, filed preliminary objections contending that the Act facilitates an unconstitutional taking of private property for a private purpose in violation of the Fifth Amendment to the

1. Act of June 13, 1836, P.L. 551 (as amended 36 P.S. §§ 2731–2891) (the "Act" or the "PRA").

Constitution of the United States and Article I, Sections 1 and 10 of the Constitution of Pennsylvania.[2]

The common pleas court overruled Appellants' objections, referencing a history of decisions upholding the constitutionality of the PRA. *See In re Opening a Private Rd. (O'Reilly)*, No. 04–2972, *slip. op.* at 19 (C.P. Allegheny, Oct. 26, 2007).[3] It did note, however, two recent decisions highlighting potential constitutional implications associated with the Act. *See In re Laying Out and Opening a Private Rd. (Zeafla)*, 405 Pa.Super. 298, 309, 592 A.2d 343, 349 (1991) ("[A]llowing a private citizen to exercise the eminent domain power for a private purpose may raise constitutional implications."); *In re Forrester*, 575 Pa. 365, 370–71, 836 A.2d 102, 105–06 (2003) (plurality) ("[T]he opening of a private road pursuant to the Act does not accomplish a public purpose[.]"). The court pondered the constitutional import of *Forrester's* plurality conclusion that the Act serves only private interests, *see O'Reilly*, No. 04–2972, *slip. op.* at 19 (inquiring, "Does [the pronouncement that the Act does not serve a public purpose] automatically invalidate the PRA for all purposes?"), but did not address the matter further, reasoning that, because *Forrester* expressly disclaimed consideration of the constitutionality of the Act, it was bound by prior authority deeming the Act to be constitutional.

**2.** The Fifth Amendment to the Constitution of the United States provides, in relevant part, "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

Article I, Section 1 of the Constitution of Pennsylvania reads, "All men ... have certain inherent and indefeasible rights, among which are those ... of acquiring, possessing and protecting property[.]" Pa. Const. art. I, § 1.

Article I, Section 10 of the Constitution of Pennsylvania provides, in relevant part, "[N]or shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured." Pa. Const. art. I, § 10.

**3.** *See In re Pocopson Rd.*, 16 Pa. 15 (1851); *In re Dickinson Twp. Rd.*, 23 Pa.Super. 34 (1903); *In re Private Rd. in East Rockhill Twp.*, 165 Pa.Cmwlth. 240, 645 A.2d 313 (1994); *T.L.C. Servs., Inc. v. Kamin*, 162 Pa.Cmwlth. 547, 639 A.2d 926 (1994); *Marinclin v. Urling*, 262 F.Supp. 733 (W.D.Pa.1967).

The common pleas court nonetheless proceeded to analyze independently whether the Act served a public purpose. Without articulating a standard to govern such analysis, the court reasoned that, despite the significant private benefits conferred by the Act, unlocking the resources of landlocked property served a public purpose sufficient to sustain constitutionality. The court acknowledged, however, that if it were bound by the statement in *Forrester* that the Act serves only private interests, it would be "compelled to agree with [this author and Madame Justice Newman] that, if analyzed pursuant to eminent domain principles, the constitutional foundation of the PRA would appear to be fatally undermined[.]" *O'Reilly*, No. 04–2972, *slip. op.* at 21 n.7 (referring to *Forrester*, 575 Pa. at 371, 836 A.2d at 106 (Saylor, J., concurring), and *id.* at 373, 836 A.2d at 107 (Newman, J., dissenting)). The court lastly suggested that, given the public policy interests at stake, the Act should be analyzed as an exercise of the state's police power and, possibly, as merely an extension of the common law "way of necessity" doctrine. *See id.* at 21 n.9 (citing *McKeighan v. Grass Lake Twp. Supervisor*, 234 Mich. App. 194, 593 N.W.2d 605 (1999), *overruled by Tolksdorf v. Griffith*, 464 Mich. 1, 626 N.W.2d 163 (2001)).

On permissive interlocutory appeal, the Commonwealth Court affirmed in a divided *en banc* opinion. *See In re Opening a Private Rd. (O'Reilly)*, 954 A.2d 57 (Pa.Cmwlth. 2008) (*en banc* ). The majority opined that the constitutionality of the PRA had been settled in Pennsylvania, *see, e.g., Waddell's Appeal*, 84 Pa. 90 (1877), until recent decisions in *Kelo v. City of New London*, 545 U.S. 469, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005), and *Middletown Township v. Lands of Stone*, 595 Pa. 607, 939 A.2d 331 (2007), sparked a renewed interest in defining what constitutes a public purpose in the eminent domain context.[4] From *Lands of Stone*, the majority

4. The Commonwealth Court majority specifically relied upon the following passage from *Waddell's Appeal*, which it attributed to this Court:

The right of the legislature to establish private roads over the land of one man for the benefit of another, for the purpose of access to highways or places of necessary public resort, or even to private ways leading to highways, has never been seriously doubted in Pennsylva-

gleaned that, in Pennsylvania, "a taking will be seen as having a public purpose only where the public is to be the primary and paramount beneficiary of its exercise.... Stated otherwise, the *true* purpose must primarily benefit the public." *O'Reilly*, 954 A.2d at 62 (quoting *Lands of Stone*, 595 Pa. at 617, 939 A.2d at 337 (emphasis in original)) (internal quotation marks and citation omitted). The court then briefly addressed *Forrester*, commenting that it "raised serious doubts about the constitutionality of the Private Road Act," owing to its suggestion that a taking under the Act "conferred no public benefit." *Id.* The court did not discuss the impact of *Forrester* immediately, however, electing instead to conduct a historical investigation of the PRA.

The *en banc* majority questioned, why, if the General Assembly recognized in the Mills Act that the Pennsylvania Constitution prohibited a riparian landowner from taking private property without the owner's consent to construct a dam, it did not require consent to take private property to build a private road under the PRA, which was enacted only one year earlier. The answer, according to the majority, was a 1700 enactment by the Pre–Commonwealth Provincial Legislature providing that every purchaser of land would be granted an additional six percent of land free of charge for the building of public roads as they became necessary.

The majority reasoned that the Commonwealth continued this practice, and that private roads were properly formed from the six percent, as they were integral to the development of the system of roads in the Commonwealth. *See id.* at 66 n. 13 (quoting Section 91 of the Public Lands Act, 64 P.S. § 91, which provides that land grants for New Purchase Lands— land purchased from the Native Americans at Fort Stanwix in 1784 and at Fort McIntosh in 1785—should include "the usual

nia[;] ... [I]t is the connection of these private ways with public highways, or with places of necessary public resort, together with the implied right or license of the public to use them, at least in going to and from the premises of the person laying them out, quite as much, if not more, as the consideration of purely individual rights, that have won for these acts judicial recognition of constitutionality.
*O'Reilly*, 954 A.2d at 61 (quoting *Waddell's Appeal*, 84 Pa. at 94).

allowance of six per centum for highways") (emphasis removed); *id.* at 66–67 (referencing the 1735 "Supplement to the Law for Laying Out of Highways and Public Roads Act" for its equal treatment of the opening of public and private roads).

The majority further relied on two decisions from this Court, *McClenachan v. Curwen,* 6 Binn. 509, 1802 WL 1000 (Pa.1802), and *Breckbill v. Lancaster Turnpike Company,* 3 Dall. 496, 1 L.Ed. 694 (Pa.1799), opining that the first explained the effect of the six percent land grant on takings law. In *McClenachan,* the Court held that an act permitting the Turnpike Company to build a road across the plaintiff's land was constitutional because such land was not his property. Instead, it was property that he held in trust for the public on account of his receipt of an additional six percent of land free of charge for roads and highways. *See O'Reilly,* 954 A.2d at 68 (citing *McClenachan,* 6 Binn. at 511, 1802 WL 1000, at *3). The *McClenachan* Court additionally deduced from the 1735 Supplement legislative intent that private roads should be laid out of the six percent because they were "necessary for the public convenience." *Id.* at 69 (quoting *McClenachan,* 6 Binn. at 513, 1802 WL 1000, at *4). The majority also referenced *Breckbill* for a similar proposition: that, "as far as the six per cent allowance for roads, the grantees of land were mere trustees for the public ...; and *with respect to private roads ..., provision was only made for compensating damages done to improved land.*" *Id.* at 69–70 (quoting *Breckbill,* 3 Dall. at 498–99) (emphasis in original).

Based on this analysis, the *en banc* majority concluded, *sua sponte,* that, from the beginning of the Commonwealth, all lands in Pennsylvania were encumbered with a six percent incorporeal burden for the building of a public road system, which included private roads. It held, therefore, that the creation of private roads under the PRA did not constitute "a taking in the ordinary sense." *Id.* at 72. The majority finally reasoned, even if it were to conduct a traditional takings analysis, it would find the Act to be constitutional, as the PRA fulfills a public purpose—notwithstanding that the private property owner who petitioned for the private road gains—

because "otherwise[,] inaccessible swaths of land in Pennsylvania would remain fallow and unproductive." *Id.*

Judge Smith–Ribner authored the dissenting opinion, in which she disagreed with the majority's reasoning that the public benefit garnered from the opening of otherwise inaccessible land rendered a taking under the PRA constitutional. Rather, the dissent credited the *Forrester* plurality's determination that the public was not the "primary and paramount beneficiary" of a taking under the Act and, thus, it reasoned, the Act was unconstitutional. *See O'Reilly,* 954 A.2d at 74–76 (Smith–Ribner, J., dissenting) (internal quotations and citation omitted). The dissent derived additional support for its position from *Tolksdorf,* 626 N.W.2d at 163, in which the Michigan Supreme Court held Michigan's analogous private road act to be unconstitutional because "it authorize[d] a taking of private property for a predominantly private purpose." *Id.* at 169.

Lastly, relying heavily on *Tolksdorf,* the dissent discussed the fundamental distinction between easements by necessity and interests created by private road acts. As the common pleas court noted, the Michigan Court of Appeals in *McKeighan,* 593 N.W.2d at 605, suggested that private road acts merely supplement the law of private easements. In overruling *McKeighan,* the Michigan Supreme Court reasoned that, unlike private easements, proceedings under a private road act allow land to be burdened—with a private right-of-way— without the owner or the owner's predecessor in interest assenting to the burden. *See Tolksdorf,* 626 N.W.2d at 169. The dissent concluded with the following:

> I agree with [the *Tolksdorf* Court's] conclusion that the primary benefit under the private roads act inures to landlocked private landowners who wish to open a private road on private property of another. Moreover, any benefit that might accrue to the public at large "is purely incidental and far too attenuated to support a constitutional taking of private property."

*O'Reilly,* 954 A.2d at 77 (Smith–Ribner, J., dissenting) (quoting *Tolksdorf,* 626 N.W.2d at 169).

Presently, Appellants claim that the Private Road Act is unconstitutional because it facilitates the transfer of property from one private property owner to another private property owner for a private use. For support, they reference holdings from this Court establishing that, constitutionally, private property can only be taken to serve a public use, which requires that the taking primarily benefit the public. *See* Brief for Appellants at 13 (citing *In re Certain Parcels of Land in First Ward of Lancaster*, 420 Pa. 295, 301, 216 A.2d 769, 772 (1966) (*"First Ward of Lancaster"*); *Lands of Stone*, 595 Pa. at 617, 939 A.2d at 337). Appellants further note a litany of continuing challenges to the PRA. *See id.* at 6 ("Despite its historical presence in Pennsylvania law, the constitutionality of the Private Road Act has been in doubt for most of the Commonwealth's history.").

While expressing that the criticisms are "of almost equal vintage" as the PRA, Appellants draw attention to *Pocopson Road,* the only case in which this Court was " 'squarely presented' " with a constitutional challenge to the Act. *Id.* at 14. Appellants stress that this Court's single-paragraph *per curiam* opinion in that case, which discerned simply that the constitutional claim lacked " 'an appearance of substance,' " and which was itself deemed insubstantial by the *Forrester* plurality, has led to "confusion and uncertainty." *Id.* at 14–15 (citation omitted). Moreover, Appellants highlight that the only case offered by the appellee in *Pocopson Road* in support of the constitutionality of the PRA was *Harvey v. Thomas,* 10 Watts 63 (Pa.1840), a now-discredited decision wherein this Court held that the Constitution did not prohibit the taking of private property for a private use. *See* Brief for Appellant at 15 n.4.

Considering *Forrester,* Appellants emphasize that, although the plurality declined to directly address the constitutionality of the Act, in concluding that it did not satisfy a public purpose, it "effectively delineate[d] the Private Road Act as unconstitutional." *Id.* at 18 (quoting *Forrester,* 575 Pa. at 372, 836 A.2d at 106 (Saylor, J., concurring)). Appellants additionally note prior observations from this Court confirming *For-*

*rester's* indication that a taking under the PRA is a "taking of private property for private use." *In re Rd. in Plum Creek Twp.*, 110 Pa. 544, 548, 1 A. 431, 433 (1885) *("Plum Creek ")*; *see* Brief for Appellants at 18 n.7 ("[J]ust as the *Forrester* Court, in the twenty-first century rejected the fiction that a Private Road Act taking is for the public benefit, so too did the *Plum Creek* Court in the nineteenth century.").

According to Appellants, the United States Supreme Court's decision in *Kelo* reaffirmed the notion that private property cannot be taken for the benefit of another private property owner.[5]  Appellants insist *Lands of Stone* represents this Court's synthesis of *Kelo,* reasoning that its requirement that there be "an intelligent plan that demonstrates ... that an authorized public purpose is the true goal of the taking," reflects this Court's recognition that the "carefully considered development plan" was integral to the Supreme Court's decision in *Kelo. See Lands of Stone,* 595 Pa. at 617, 621, 939 A.2d at 338, 340 (internal quotation marks omitted).  Along these lines, they aver that, under Pennsylvania law, the PRA should be evaluated by the standard articulated in *Lands of Stone*— the "primary and paramount beneficiary" public purpose standard.

Appellants maintain that, applying this standard in the present case plainly illustrates that the PRA is unconstitutional:

> [Appellee's] proposed seizure of [Appellants'] private property pursuant to the Private Road Act is clearly an attempt to take private property for a private use.  The "primary and paramount beneficiary" of the proposed taking indisputably would be [Appellee].  Any benefits to the public would

5.  *See Kelo,* 545 U.S. at 477–78, 125 S.Ct. at 2661 ("[T]he City would no doubt be forbidden from taking [private] land for the purpose of conferring a private benefit on a particular private party.... Nor would the City be allowed to take property under the mere pretext of a public purpose, when its actual purpose was to bestow a private benefit.") (internal citations omitted); *cf. First Ward of Lancaster,* 420 Pa. at 299–301, 216 A.2d at 771–72 ("[T]he Constitution of Pennsylvania, Article I, Section 10 [] requires that private property be taken only for public use[;] ... [I]f the purpose is not for a public use, the taking is unconstitutional.").

be tenuous and incidental, at best. [Appellee] does not, and could not plausibly, contend otherwise.

Brief for Appellants at 23. Additionally, Appellants, along with *Amicus* Institute for Justice, highlight a number of decisions from other states finding their respective private road acts to be unconstitutional.[6]

Addressing the argument that the Act is merely a police power regulation that does not involve a taking of property, Appellants explain that, if Appellee were to succeed in the PRA action, they would lose many of the benefits of property ownership. Moreover, Appellee would be able to come and go as he pleased over property that, at present, he does not own, and from which Appellants can now lawfully exclude him. They further contend, under both federal and Pennsylvania constitutional law, that a physical invasion and permanent occupation of property, such as that which would attend the building of a road, effects a taking of that property. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 421, 102 S.Ct. 3164, 3168, 73 L.Ed.2d 868 (1982) ("[A] physical occupation of property is a taking."); *Plum Creek*, 110 Pa. at 548, 1 A. at 443 (characterizing the creation of a road under the Private Road Act as a "taking of private property for private use").

Regarding the Commonwealth Court majority opinion, Appellants allege that, by *sua sponte* concluding that all land in Pennsylvania is encumbered by a six percent incorporeal burden for the building of roads, the court has rendered takings under the Private Road Act exempt from constitutional scrutiny in the nature of the "public use" standard. *See* Brief for Appellants at 27 ("[T]he Commonwealth Court's assertion that its 'incorporeal burden' on all Pennsylvania property should trump and nullify the traditional 'public use' scrutiny under the federal and Pennsylvania constitutions is

---

**6.** *See, e.g., Tolksdorf,* 626 N.W.2d at 163; *Clark v. Bd. of Comm'rs of Mitchell County,* 69 Kan. 542, 77 P. 284 (1904); *Waggoner's Estate v. Gleghorn,* 378 S.W.2d 47 (Tex.1964); *Welton v. Dickson,* 38 Neb. 767, 57 N.W. 559 (1894); *Varner v. Martin,* 21 W.Va. 534 (1883); *Witham v. Osburn,* 4 Or. 318 (1873); *Osborn v. Hart,* 24 Wis. 89 (1869); *Bankhead v. Brown,* 25 Iowa 540 (1868); *Sadler v. Langham,* 34 Ala. 311 (1859).

wrong, radical, and unprecedented."). Appellants further attest that the idea of such a burden is both factually and legally erroneous.

As concerns the existence of a statewide encumbrance, Appellants offer a series of challenges. They note, first, that original landowners in Pennsylvania retained land for their personal use; as this land was never conveyed, there was never an opportunity to attach an incorporeal burden. Furthermore, after Independence, the Pennsylvania Legislature confirmed the ownership of these lands without mention of a six percent road allowance. *See* 64 P.S. § 4. Likewise, the Legislature provided that pre-Independence land grants were to be patented pursuant to Section 39 of the Public Lands Act, which bestows grantees with "absolute and unconditional property, to all intents and purposes whatsoever, . . . *clear and exonerated from any charge or encumbrance whatsoever*, excepting the debts of said owner." Brief for Appellants at 25 (quoting 64 P.S. § 39) (emphasis in original).

Lastly, Appellants aver that, at one time, the southwest corner of Pennsylvania, including the land at issue, was embroiled in a land dispute with the Commonwealth of Virginia. *See id.* at 26 (citing DONNA BINGHAM MUNGER, PENNSYLVANIA LAND RECORDS—A HISTORY AND GUIDE FOR RESEARCH 133–35 (Scholarly Resources, Inc. 1991)). In resolving this dispute, persons who held Virginia warrants for lands determined to be in Pennsylvania were allowed to submit those warrants to the Pennsylvania Land Office, which would accept them, provided that there was not a conflicting superior claim to the land. Appellants criticize the Commonwealth Court for failing to consider whether any of these warrants included a six percent allowance for roads.

With particular respect to Appellants' property, which is located south of the Allegheny and the Ohio rivers, Appellants discount the Commonwealth Court's reliance on Section 91 of the Public Lands Act, claiming that their land was never subject to Section 91. *See id.* at 26 & Appendix E. *See also* 64 P.S. § 91 n.2 ("This act refers to the two purchases made of the Indians, at Fort Stanwix in 1784 and at Fort McIntosh in

1785."). Appellants maintain that their property, which was part of land purchased from the Native Americans in 1768, was, instead, granted pursuant to Sections 61 to 70 of the Public Lands Act, 64 P.S. §§ 61–70. These laws, which make no mention of a six percent allowance for roads, further establish that the land is to be patented under, *inter alia*, Section 39 of the Public Lands Act, *supra. See* 64 P.S. § 64 & n.1.

Moreover, Appellants dispute the Commonwealth Court's application of *McClenachan*, highlighting that this Court differentiated that type of case, which addressed a condemnee's right to receive compensation for unimproved lands taken for a public road, from one involving lands taken to form a private road. *See* Brief for Appellants at 28 ("[D]istinguishing ... takings for public roads from 'takings of private property for private use,' which are 'wholly different' and '*prima facie* unconstitutional[.]' ") (quoting, in part, *Plum Creek*, 110 Pa. at 548, 1 A. at 433). Additionally, Appellants challenge the Commonwealth Court's reference to statements purportedly made by this Court in *Waddell's Appeal*, 84 Pa. at 90, and *Breckbill*, 3 Dall. at 496. Appellants point out that the Commonwealth Court's quotation from *Waddell's Appeal*, *see supra* note 4, which it attributed to this Court and which it used to support its initial conclusion concerning the settled nature of the constitutionality of the PRA, was actually written by the trial court in that case. *See* Brief for Appellants at 29–30; *O'Reilly*, 954 A.2d at 61. Furthermore, Appellants note that the appellants in *Forrester* committed the same error, which a plurality of this Court expressly addressed in its opinion.[7] With respect to *Breckbill*, Appellants emphasize that the Court decided the case on a procedural issue and never reached the merits; the Commonwealth Court thus mistaken-

---

7. *See Forrester*, 575 Pa. at 368–69, 836 A.2d at 104 ("[Appellants] contend that this court in *Waddell's Appeal* declared that the opening of a private road did not authorize the taking of private property for private use; rather, this court ostensibly concluded that such a taking confers benefits on the public.... Unfortunately, the language cited by Appellants was not written by this court, but rather was penned by the trial court in that matter; there is no indication that this court adopted such language.").

ly attributed to this Court the defendants' arguments in the case. *See Breckbill,* 3 Dall. at 498–500.

Appellants conclude that the Commonwealth Court failed to answer the appropriate constitutional question, namely, whether the public is the "primary and paramount beneficiary" of a taking under the Private Road Act. *See* Brief for Appellants at 28, 30 ("With its misguided historical review, its creation of an 'incorporeal burden' on all Pennsylvania properties, and its reliance on statements it incorrectly attributes to this Court, the Commonwealth Court failed to address the fundamental constitutional question this case presents.").

Appellee responds by tracing the Pennsylvania courts' persistent refusal to find the PRA unconstitutional. *See* Brief for Appellee at 12 (referencing "an extensive history of Pennsylvania jurisprudence which has declined on every occasion in the PRA's one hundred seventy three year history to find the statute unconstitutional and which has offered at least rational public purposes served by the PRA"). Appellee explains that the taking of private property for private use is not expressly prohibited by the Constitutions of the United States or Pennsylvania, nor is it mutually exclusive of a taking to serve a public purpose. Indeed, he claims that the opening of a road to access otherwise landlocked property "necessarily implicates important public interests." *Id.* at 1. For support, Appellee points to Justice Newman's dissenting opinion in *Forrester,* which concluded that the Act provided essential public benefits, and recent changes to the Eminent Domain Code (the "EDC") in the wake of *Kelo,* which, Appellee argues, confirm Justice Newman's conclusion. *See Forrester,* 575 Pa. at 376, 836 A.2d at 109 (Newman, J., dissenting); 26 Pa.C.S. §§ 101–1106. Believing that *Kelo* stands for the proposition that "public purpose" should be broadly construed, and relying on *Kelo's* deference to legislative judgments in the context of defining a public purpose, Appellee focuses on Section 2 of the EDC:

[N]otwithstanding the [Pennsylvania] Legislature's intent to severely limit the use of eminent domain "to take private property in order to use it for private enterprise," (26

Pa.C.S. § 204(a)), the Legislature nevertheless, expressly permitted the use of eminent domain in cases where "the property is used or to be used . . . to provide access to a public thoroughfare for a property which would be otherwise inaccessible[.]" (26 Pa.C.S. § 204(b)(9)).

Brief for Appellee at 17.

While maintaining that the EDC does not govern proceedings under the PRA, Appellee avers that Section 204(b)(9) nonetheless demonstrates that the Act serves a public purpose and is, therefore, constitutional. Additionally, Appellee claims that Section 204(b)(9) evinces the Pennsylvania Legislature's intent to abrogate *Forrester's* intimation that "the PRA is devoid of public purpose." *Id.* at 20. Appellee notes, moreover, that Section 204(b)(9) is especially applicable in cases such as the present one, where Appellee's original means of access to the property was extinguished as a result of the Commonwealth's exercise of eminent domain to build Interstate 79.

Although Appellee rejects the *Forrester* plurality's conclusion that the PRA does not serve a public purpose, he nevertheless relies on its determination that the Act does not involve a taking by eminent domain. Appellee thus contends that Appellants' reliance on eminent domain cases is misplaced. Specifically, he claims that the "primary and paramount beneficiary" standard for evaluating eminent domain takings articulated in *Lands of Stone* is inapplicable. He avers, instead, that the PRA involves a reasonable regulation of property usage derived from the Commonwealth's police power. In supportive reasoning, he compares the present case with *Miller & Son Paving, Incorporated v. Wrightstown Township*, 499 Pa. 80, 451 A.2d 1002 (1982), in which this Court upheld a local zoning regulation that increased the setback applicable to quarrying operations, rejecting claims that it effectively " 'confiscated' " over two million tons of stone and finding, instead, that it was a proper exercise of police power. Brief for Appellee at 29–30 (citation omitted). Distinguishing the exercise of police power from that of eminent domain, Appellee explains that police power controls the

use of property by the owner, for the public good; whereas, eminent domain involves the taking of property from the owner for a public use. *See id.* at 34 (citing *White's Appeal,* 287 Pa. 259, 264, 134 A. 409, 411 (1926)).

In furtherance of his argument that the Act does not constitute an exercise of eminent domain, Appellee analogizes the rights provided under the Act to private easement rights, asserting that the PRA simply provides the owner of land-locked property the ability to obtain an easement for the limited purpose of accessing a public thoroughfare. He maintains, given his inability to obtain an easement by necessity or prescription, that the Legislature could fashion a private cause of action, such as that created by the PRA, within its constitutional authority, to afford him otherwise unavailable relief. Finally, Appellee briefly summarizes the Commonwealth Court's historical analysis, reasoning that it provides additional support for the validity of the PRA.

■ As discussed above, the Commonwealth Court opined, *sua sponte*, that all land in Pennsylvania is subject to an incorporeal burden, a conclusion derived from a pre-Constitution provision by the Provincial Legislature adding six percent to land grants for public roads as they became necessary. *See O'Reilly,* 954 A.2d at 65; Brief for Appellants at 25–28. For statutory support, the court referenced Section 91 of the Public Lands Act, which authorizes land grants "with the usual allowance of six per centum for highways." 64 P.S. § 91. As Appellants highlight, however, Section 91, by its terms, applies only to land purchased from the Native Americans at Fort Stanwix in 1784 and at Fort McIntosh in 1785. *See* 64 P.S. § 91 n.2. Notably, the Commonwealth Court neither established that Appellants' land was within the lands governed by Section 91, nor demonstrated how, notwithstanding Section 91's express geographical limitation, it has statewide relevance.

Additionally, as Appellants further develop, Sections 61 to 70 of the Public Lands Act also governed land grants in Pennsylvania; moreover, unlike Section 91, they contain no

provision for additional land for roads. Appellants' assertion, uncontested by Appellee, that the land at issue was granted pursuant to Sections 61 to 70, rather than Section 91, ostensibly undermines the Commonwealth Court's determination that Appellants' property is subject to an incorporeal burden.

It appears that, by relying exclusively on Section 91, while neglecting its limitations, the Commonwealth Court has supplied an incorporeal-burden analysis which is incomplete at the very least, if not simply untenable. As we can glean no support for the position crafted by the Commonwealth Court that an incorporeal burden attends Appellants' property, we are unable to credit its conclusion that a taking of that property under the PRA "is not a taking in the ordinary sense." *O'Reilly,* 954 A.2d at 72.

Relatedly, we reject Appellee's argument that the creation of a private road under the Act is not a taking, but, instead, embodies reasonable regulation of property usage or provision of an otherwise unavailable private easement, both exercised under the Commonwealth's police power. *See* Brief for Appellee at 25–26. As Appellants correctly observe, irrespective of the police-powers rubric, a physical invasion and permanent occupation of private property, such as that which would be accomplished by the creation of a private road under the Act, is a taking. *See Loretto,* 458 U.S. at 421, 102 S.Ct. at 3168; *Plum Creek,* 110 Pa. at 548, 1 A. at 433. *See generally* WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 2903 (2009) ("[A] law taking property outright, as distinguished from one depreciating the value of property in the hands of the owner, cannot be justified under the police power[.]").

Likewise, we are unconvinced by Appellee's contention that the Act does not effect a taking by eminent domain and, as such, it is inappropriate to evaluate proceedings under the Act pursuant to eminent domain principles. *See* Brief for Appellee at 23. In advancing this argument, Appellee relies on *Forrester's* plurality determination that, "as the opening of a private road pursuant to the PRA [sic] does not accomplish a public purpose, *it cannot be seen as an exercise of the power of*

*eminent domain.*" *Id.* (quoting *Forrester*, 575 Pa. at 370–71, 836 A.2d at 105–06) (emphasis in original). This Court, however, has recognized that, absent a valid exercise of the power of eminent domain,

> █t is not within the power of the Legislature to invest either an individual or a corporation with the right to take the property of a private owner for the private use of some other individual or corporation, even if a method is provided for ascertaining the damages and paying what shall be deemed just compensation.

*Phila. Clay Co. v. York Clay Co.*, 241 Pa. 305, 309–10, 88 A. 487, 488 (1913). *See also In re Lance's Appeal*, 55 Pa. 16, ——, 1867 WL 7489, *7 (1866).[8] For this reason, the rationale advanced by the *Forrester* plurality does not offer a constitutionally firm foundation to vindicate Appellee's cause.

█ The Constitutions of the United States and Pennsylvania mandate that private property can only be taken to serve a public purpose. *See supra* note 5; *accord* 26 Pa.C.S. § 102. This Court has maintained that, to satisfy this obligation, the public must be the primary and paramount beneficiary of the taking. *See Lands of Stone*, 595 Pa. at 617, 939 A.2d at 337. Indeed, although the Commonwealth Court acknowledged this requirement as controlling, *see O'Reilly*, 954 A.2d at 62, it neglected to apply it on its terms. Rather, the court's reasoning speaks merely to the presence of some public benefit, as follows:

> Although the private property owner who petitioned for the private road certainly gains from the opening of the road, the public gains because otherwise inaccessible swaths of land in Pennsylvania would remain fallow and unproductive, whether to farm, timber or log for residences, making that land virtually worthless and not contributing to commerce

**8.** *See generally Balent v. City of Wilkes–Barre*, 542 Pa. 555, 565, 669 A.2d 309, 314 (1995) ("Eminent domain is the power to take property for public use."); *Phila. Clay Co.*, 241 Pa. at 310, 88 A. at 488 ("Eminent domain is the sovereign power vested in the commonwealth to take private property for public use.... The power is not necessarily created either by Constitution or statute, but is an inherent attribute of sovereignty itself.").

or the tax base of this Commonwealth. All of this, plus the fact that private roads are considered part of the road system of Pennsylvania, equate with the conclusion that a public purpose is served by the Private Road Act provisions that allow for the taking of property of another for a private road to give access to landlocked property.

*Id.* at 72. While this passage indicates at least an indirect benefit to the public, there is no attempt to confirm that the public is the primary and paramount beneficiary.

Thus, the Commonwealth Court has neither supplied a sufficient rationale to support its theory of a statewide incorporeal burden nor put into application the prevailing standard governing takings.

Perhaps the most compelling assertions advanced by Appellee lie in the purported interrelation between the Commonwealth's initial exercise of its eminent domain power to construct an interstate highway—which apparently isolated Appellee's property from access to public roads—and Appellee's subsequent invocation of the PRA to restore access. In light of the course this appeal has taken, however, potentially relevant details (for example, whether Appellee's use of the PRA to restore access to the property was contemplated at the time the Commonwealth removed it, and whether Appellee acted with reasonable promptitude such that the two takings reasonably might be regarded as an interconnected course of events) are not well developed before this Court. Accordingly, we will return the matter to the Commonwealth Court to consider this and any remaining matters which have been raised and preserved for judicial review and which may bear on whether the public is fairly regarded as the primary and paramount beneficiary.

The dissent would take this opportunity to reaffirm *Pocopson Road* without addressing the shortcomings asserted by Appellants, including that decision's: lack of a coherent rationale; apparent reliance on a discredited case; and incompatibility with the prevailing standard for takings which this Court has otherwise indicated is to be uniformly applied. Further,

the dissent also gives no overt consideration to Appellants' arguments concerning the internal limitations of the *Kelo* decision. Finally, the dissent offers implied easements by necessity as an analogue to Private Road Act takings without attending to the distinction, highlighted by Judge Smith–Ribner's dissent, arising from the involvement of a common owner in the chain of title in way-of-necessity scenarios. *See O'Reilly*, 954 A.2d at 77 (Smith–Ribner, J., dissenting).

We have concluded that the court of original appellate jurisdiction has the responsibility, in the first instance, to review Appellants' preserved and colorable arguments, and any decision to affirm the taking of their property should be closely reasoned. In our view, the dissent's position that there are no difficulties here—because *Pocopson Road* baldly said there are none—is an unsustainable one.[9]

The order of the Commonwealth Court is vacated and the matter is remanded for further review consistent with this opinion.

Justice TODD, Justice McCAFFERY and Justice ORIE MELVIN join the opinion.

Justice EAKIN files a dissenting opinion in which Chief Justice CASTILLE and Justice BAER join.

Justice EAKIN.

## DISSENTING OPINION

I respectfully dissent from the majority's opinion, as the constitutionality of the Private Road Act (Act) is well settled.[1]

9. The dissent also complains that we have not explained the significance of the degree of interconnectedness between the taking of a portion of Appellants' property and the construction of an interstate highway. We believe, however, in terms of whether the public fairly may be regarded as the primary and paramount beneficiary, such import should be apparent to the Commonwealth Court.

1. *See In Re: Pocopson Road,* 16 Pa. 15 (1851) (rejecting constitutional challenge to Private Road Act); *In Re: Dickinson Township Road,* 23 Pa.Super. 34 (1903) (rejecting contention that Private Road Act is unconstitutional); *In Re: Private Road in East Rockhill Township, Bucks*

Despite the Act's 173–year history and numerous opportunities to review its constitutionality, this Court has never determined the Act to be unconstitutional, nor has the Legislature indicated a desire to repeal it. Indeed, as Appellee argues, the Legislature seems to have recently bolstered the Act's purpose of providing relief to a landlocked landowner. After the United States Supreme Court's decision in *Kelo v. City of New London*, 545 U.S. 469, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005), which generated much debate regarding eminent domain and private property rights, the Legislature specifically permitted the use of eminent domain proceedings to create access to a landlocked property. *See* 26 Pa.C.S. § 204(b)(9) (stating power of eminent domain may be used to take private property where "The property is used . . . for any road . . . to provide access to a public thoroughfare for a property which would be otherwise inaccessible as the result of the use of eminent domain. . . ."). While this is not an eminent domain case, § 204(b)(9) suggests the Legislature clearly intends to ensure landlocked landowners will have a continuing remedy to gain access to a public thoroughfare.

By simply granting a private right of action to an otherwise landlocked landowner, the Act is akin to the common law doctrine of easement by necessity, which has long been used to allow a landlocked landowner to access a public highway over another's private land when no other relief is available. Although an easement by necessity is typically the result of land which has been severed by its original owner, here, Appellee's land was severed by the Commonwealth in order to facilitate construction of Interstate 79. Therefore, without the Act, Appellee would have no other relief to gain access to the property, leaving it unproductive—a result which is not in the public's interest.

Furthermore, I believe the majority's justification to remand is based, in part, upon irrelevant considerations. The

*County, Pa.*, 165 Pa.Cmwlth. 240, 645 A.2d 313 (1994) (confirming Private Road Act's constitutionality); *T.L.C. Services, Inc. v. Kamin* 162 Pa.Cmwlth. 547, 639 A.2d 926 (1994) (confirming Private Road Act's constitutionality).

majority fails to explain how a determination of whether the Act was contemplated at the time the Commonwealth possessed the land or "whether Appellee acted with reasonable promptitude" will significantly alter the analysis of this issue to justify additional proceedings and expenditure of resources. Majority op., at 300, 5 A.3d at 258. The parties' briefs and opinions below sufficiently addressed the arguments necessary for a determination of the issue presented on appeal. Accordingly, I see no need to remand for additional proceedings and respectfully dissent.

Chief Justice CASTILLE and Justice BAER joins this dissenting opinion.