**[J-100-2018] [MO: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| IN RE: PETITION OF BURTON R. ADAMS AND JOANNE M. ADAMS, HIS WIFE | : : : | No. 9 MAP 2018 |
| | : : : | Appeal from the Order of the Commonwealth Court dated September 21, 2017 at No. 863 CD |
| APPEAL OF: WILLIAM DITTMAR AND JAMES M. CORL | : : : : : : : | 2016 Affirming the Order of the Sullivan County Court of Common Pleas, Civil Division, dated April 6, 2016 at No. 2013-CV-90. |
| | : : | ARGUED: December 5, 2018 |

**CONCURRING OPINION**

**JUSTICE WECHT**                                                        **DECIDED: July 17, 2019**

I concur in the result. The Majority reverses on the basis that the Adamses' future intended use of the property is irrelevant to determining necessity under the Private Roads Act.[1] I hesitate to conclude that such evidence is categorically immaterial to the inquiry. Instead, I would reverse the Commonwealth Court's order on the ground that no public purpose exists for opening the private road used by the Chesapeake Corporation ("Chesapeake roadway") in order to provide the Adamses access to the northern portion of their property.

In *In re Opening Private Road for Benefit of O'Reilly*, 5 A.3d 246 (Pa. 2010), responding to a constitutional challenge to the Act, this Court concluded that "a physical

---

[1]     36 P.S. §§ 2731-2891 ("the Act"). Under the Act, the owner of a landlocked property is permitted to petition the Court of Common Pleas for the appointment of a Board of View to evaluate the necessity of a private road to connect the property with the nearest public thoroughfare. *See id.* § 2731. "If it shall appear by the report of viewers to the court directing the view, that such road is *necessary*, the said court shall direct what breadth the road so reported shall be opened. . . ." *Id.* § 2732 (emphasis added).

invasion and permanent occupation of private property, such as that which would be accomplished by the creation of a private road under the Act, is a taking." *Id.* at 257. "Absent a valid exercise of the power of eminent domain," we explained:

> it is not within the power of the Legislature to invest either an individual or a corporation with the right to take the property of a private owner for the private use of some other individual or corporation, even if a method is provided for ascertaining the damages and paying what shall be deemed just compensation.

*Id.* (quoting *Phila. Clay Co. v. York Clay Co.*, 88 A. 487, 488 (Pa. 1913)). Proceeding under eminent domain principles, this Court emphasized that the Constitutions of the United States and Pennsylvania mandate that private property may be taken only for a public purpose.[2] Indeed, the "public must be the *primary and paramount beneficiary* of the taking." *Id.* at 258 (emphasis added); *see Middletown Twp. v. Lands of Stone*, 939 A.2d 331, 338 (Pa. 2007) (emphasizing that the public purpose must be "real and fundamental, not post-hoc or pre-textual").

The *O'Reilly* Court acknowledged that there is an "indirect benefit" to the public in opening a road for a private property owner because "otherwise inaccessible swaths of land in Pennsylvania would remain fallow and unproductive, whether to farm, timber or log for residences, making that land virtually worthless and not contributing to commerce or the tax base of this Commonwealth." *O'Reilly*, 5 A.3d at 258. However, this Court rejected the sufficiency of such an "indirect benefit" to sustain the constitutionality of

---

[2]    U.S. CONST. amend. V ("[N]or shall private property be taken for public use, without just compensation."); PA. CONST. art. 1, § 10 ("[N]or shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured.").

takings under the Act without a determination that the "public is the primary and paramount beneficiary." *Id.* at 258.[3]

In the case before us, it is clear that opening the Chesapeake roadway to the Adamses primarily serves their interests. Any benefits to the public are tenuous and incidental, at best. Before the Board of View, Mr. Adams testified that he sought an opening of a private road in order to reach a portion of his property for the purpose of "build[ing] a house or a cabin on the corner where it has a good view." N.T., 7/24/2015, at 22. On cross-examination, when Mr. Adams was asked if the "need for access . . . is so that you may construct a single family residential home on your land overlooking the valley below," Mr. Adams responded, "That's accurate. . . ." N.T., 7/24/2015, at 32. The Board of View recognized as much when it concluded that the Adamses "should be granted the requested access over and upon [Corl's] land for the stated purpose of constructing and accessing a seasonal cabin. . . ." Board of View Report, 8/31/2015, at 10. Based upon these admissions and the Board's findings, it seems clear that the "true purpose" of opening the Chesapeake roadway to the Adamses was to benefit the Adamses.

At different points in the proceedings below, the Adamses invoked two separate public purposes in order to justify opening the Chesapeake roadway. Neither of these established that "the public is the primary and paramount beneficiary." *See O'Reilly*, 5 A.3d at 258. The Adamses first claimed that the Chesapeake roadway serves a public purpose by transporting and supplying natural gas to the public. Mr. Adams testified that

---

[3] The *O'Reilly* Court stopped short of declaring the Act unconstitutional. However, the circumstances under which the opening of a private road would be constitutionally permissible under the Act appear tightly circumscribed. Indeed, on remand in *O'Reilly*, one judge posited that this Court's decision in *O'Reilly* "for all intents and purposes rendered the Act constitutionally unenforceable." *In re O'Reilly*, 100 A.3d 689, 698 (Pa. Cmwlth. 2014) (Leadbetter, J., concurring).

the Chesapeake roadway is "used constantly by Chesapeake to access the gas pad which is . . . providing gas to the general public through a pipeline." N.T., 7/24/2015, at 10. I agree with Judge Hearthway's conclusion below that Chesapeake's use of the roadway is "irrelevant and cannot, as a matter of law, support a finding of public benefit." *See In re Adams*, 170 A.3d at 600 (Hearthway, J., dissenting). As a matter of law, the sole inquiry is whether opening the Chesapeake roadway *to the Adamses* will benefit the public. Opening the Chesapeake roadway to the Adamses would not advance the public purpose of transferring and supplying natural gas, an enterprise that had been ongoing for approximately two years before the Adamses sought to open the private road.[4]

The Adamses next invoked the public purpose of allowing the public to hunt on their property. Mr. Adams testified that, on December 15, 2014, he entered into a "contract with the Pennsylvania Game Commission under the Safety Zone Program to allow . . . the general public to hunt" on his property. N.T., 7/24/2015, at 19-20. I do not mean to foreclose the possibility that, under certain circumstances, opening a private road to allow for recreational hunting may be considered a public purpose. But such a proposed use must not be "post-hoc or pre-textual." *See Middletown Twp.,* 939 A.2d at 338. The Adamses did not enroll their property with the Game Commission until twenty-two months *after* they filed their petition to open the Chesapeake roadway. Only after Corl filed exceptions to the Board of View's initial decision did the Adamses advance this alleged public purpose. The timing of the Adamses' enrollment of their property with the Game Commission, coupled with the admissions made by Mr. Adams before the Board of View, compel my conclusion that allowing hunters onto the property was not the real or fundamental purpose supporting the opening. It was a *post hoc* justification, a pretext.

---

[4]     Mr. Adams testified that Chesapeake built the roadway five or six years before he sought to open the private road, and that the gas pad had been operational for two years preceding the instant litigation. N.T., 7/24/2015, at 12-13.

We are required to analyze openings under the Act pursuant to principles of eminent domain. The Adamses, not the public, would be the primary and paramount beneficiaries of the opening of the Chesapeake roadway. I would reverse the decision of the Commonwealth Court on that basis.

Chief Justice Saylor and Justice Todd join this concurring opinion.