# In the Matter of a Private Road for O'Reilly

354

C.P. of Allegheny County, No. 04-2972.

*William P. Bresnahan* and *William P. Bresnahan, II,* for petitioner
*Kevin P. Allen,* for respondent

FIKE, *S.J.*, March 5, 2013—

## MEMORANDUM

This litigation commenced with the filing by Timothy P. O'Reilly ("petitioner") of a "petition for the appointment of a board of viewers pursuant to 36 P.S. section 2731, et seq.", requesting that a private road be laid out and opened across land of adjoining property owners to provide access to petitioner's landlocked property.

The case is now before this court on remand from the Commonwealth Court with direction to develop an evidentiary record so that findings of fact can be made to provide the basis for a decision whether the opening

of a private road pursuant to the legislation known as the Private Road Act, 1836, June 13, P.L. 551, §11, as amended, 36 P.S. §2731, et seq., entitled "Proceedings To Open Private Roads" ("act"), under the circumstances presented by the instant petition, would constitute an unconstitutional taking of private property in violation of the Fifth Amendment to the United States Constitution and Article I, Sections 1 and 10 of the Pennsylvania Constitution.

A brief summary of the history of the case will provide a background that might be helpful in understanding the present procedural posture of the proceedings and the task now assigned to this court as a trial court.

Petitioner is the owner of two parcels of land that became landlocked as a result of the Commonwealth's condemnation of a portion of the tracts of which the two parcels were a part, for the purpose of constructing the interstate highway designated Interstate 79. Respondent, Hickory on the Green Homeowners Association ("Hickory on the Green"), is a corporation that serves as a homeowners association for residents of the Hickory on the Green subdivision. At the time the petition was filed, the respondent, Mary Lou Sorbara ("Sorbara") owned a parcel of land lying between petitioner's landlocked property and land of the Hickory on the Green subdivision. Sorbara's land is now owned by Mark Polk. The remaining respondents are property owners in the Hickory on the Green subdivision. Petitioner seeks to have a road established across the Sorbara (now Polk) property, to the Hickory on the Green subdivision property, thence

continuing across the subdivision property to the cul de sac on a public road known as Clubview Drive in the subdivision.

The filing of the petition elicited preliminary objections from Hickory on the Green and the individual respondents. The preliminary objections included the contention that the act is unconstitutional, and that, consequently, if the petition were granted, the opening of the private road easement requested by petitioner would be unconstitutional as taking respondents' property for a private, rather than public, purpose and use.

This court determined that, under then controlling appellate authority, the act was not unconstitutional; that, therefore, if the prerequisites established in the act were met, opening of the proposed road pursuant to the provisions of the act would not constitute an unconstitutional taking; and that, therefore, the preliminary objection based on respondents' constitutional challenge should be overruled. Interlocutory appeal to Commonwealth Court ensued.

Upon appeal, the Commonwealth Court affirmed in a divided en banc opinion. *In re: Opening a Private Road for the Benefit of O'Reilly*, 954 A.2d 57 (Pa. Cmwlth. 2008). The majority concluded that applicable precedent required such a result; that even under traditional takings analysis, "a public purpose is served by allowing the laying out of roads over the lands of another" for access to landlocked property, *id.* at 72; that, because of historical imposition of an incorporeal burden on all land of six percent for construction of roads, laying out of a road under the act was not a taking, but an obligation imposed on all

landowners to allow for the construction of private roads in the manner determined by their elected representatives; and that historically, private roads laid out to provide ingress and egress had been considered a necessary part of the Commonwealth's road system.

Respondents appealed to the Supreme Court, which, in a divided opinion, vacated the Commonwealth court's decision and remanded the case to the Commonwealth Court for further review. *In re: Opening a Private road for the Benefit of O'Reilly*, 607 Pa. 280, 5 A.3d 246 (2010). The Supreme Court did not declare the act facially unconstitutional. However, the court's majority disagreed with the reasoning upon which the Commonwealth Court's constitutional analysis was based; rejected its reliance on the concept of an historical incorporeal burden alleged to have been imposed on all landowners in the Commonwealth; and dismissed petitioner's argument that, since establishment of a private road under the act is not governed by the Eminent Domain Code, opening of the requested road would not constitute a taking at all, but, rather, a valid exercise of the police power. The majority opinion, also, rejected the suggestion that the purpose served by the act is analogous to the doctrine of implied easement by necessity, pointing out that the element of severance by a common owner that gives rise to the implication of consent in a case of easement by necessity is lacking in the instant case. *Id.*, 607 Pa. at 258, 5 A.3d at 301.

The Supreme Court majority explained that, although not governed by the Eminent Domain Code, creation of

a road under the act's provisions must be evaluated by the same strict standards as an exercise of the power of eminent domain by a government agency. Therefore, to satisfy the requirement that a taking serve a public purpose, "the public must be the primary and paramount beneficiary of the taking." *Id.* at 299, 5 A.3d at 258. The court concluded that the Commonwealth Court's majority opinion had not analyzed the purpose of the taking by the proper standard. Consequently, the court vacated the Commonwealth Court's decision, and determined that remand to the Commonwealth Court was necessary, explaining:

> Perhaps the most compelling assertions advanced by Appellee lie in the purported interrelation between the Commonwealth's initial exercise of its eminent domain power to construct an interstate highway-which apparently isolated Appellee's property from access to public roads-and Appellee's subsequent invocation of the PRA [Act] to restore access. In light of the course this appeal has taken, however, potentially relevant details (for example, whether Appellee's use of the PRA to restore access to the property was contemplated at the time the Commonwealth removed it, and whether Appellee acted with reasonable promptitude such that the two takings reasonably might be regarded as an interconnected course of events) are not well developed before this court. Accordingly, we will return the matter to the Commonwealth Court to consider this and any remaining matters which have been raised and preserved for judicial review and which may bear on

whether the public is fairly regarded as the primary and paramount beneficiary.

We have concluded that the court of original appellate jurisdiction has the responsibility, in the first instance, to review appellants' preserved and colorable arguments, and any decision to affirm the taking of their property should be closely reasoned...

607 Pa. at 300-01, 5 A.3d at 258-59.

Upon remand, the Commonwealth Court concluded that there was not enough information in the record to allow a determination of whether the public would be the primary and paramount beneficiary of the taking:

There are a number of reasons for this: this case is before us on appeal from preliminary objections, so there is no factual record; the parties' pleadings did not specifically address the standard that our Supreme Court has now made clear applies; and there is nothing in the pleadings relating to the issue of the highway condemnation raised by our Supreme Court.

We therefore will remand this case to the court of common pleas to hold a hearing, make findings of fact, and consider these issues. At this hearing, the court should consider not only evidence presented by the parties about the alleged highway taking that caused the parcel at issue to become landlocked, but also any other evidence relevant to determining who the primary and paramount beneficiary of the proposed taking would be.

*In re: Opening A Private Road for the Benefit of O'Reilly,* 22 A.3d 291, 297 (Pa. Cmwlth. 2011).

In a footnote, the Commonwealth Court added the following guidance to the trial court:

> In addition, if it becomes necessary for the pleadings to be amended for this issue to be fully considered, such amendments should be allowed. We believe this is appropriate in light of the fact that the Act has long been held constitutional and, more to the point, our Supreme Court's opinion in this case was the first to suggest a case by case analysis of public purpose with respect to the opening of a *private* road.

*Id.* at 297 n.6. [Emphasis in original].

Petitioner subsequently filed an amended petition, to which respondents filed preliminary objections, again questioning the constitutionality of the act and the opening of the road requested in the amended petition. A period of discovery ensued, including depositions of petitioner and of James Broadbent, a former Pennsylvania Department of Transportation employee, and production of documents surrounding the condemnation of property that had occurred in the 1960s for the purpose of construction of Interstate 79, including documents relating to the condemnation of portions of the tracts of which petitioner's present landlocked parcels were a part. Hearing pursuant to the Commonwealth Court's remand was held on January 10, 2013. Respondents presented testimony from a homeowner in the Hickory on the Green subdivision and testimony from petitioner, and introduced petitioner's

deposition and various documents into evidence. In addition, the parties submitted a Stipulation of Facts.

## FINDINGS

The parties stipulated to the following facts.

1. Petitioner is Timothy P. O'Reilly ("O'Reilly") who resides at 3340 Washington Pike, in the Township of South Fayette, Bridgeville, PA, County of Allegheny and Commonwealth of Pennsylvania.

2. Petitioner owns certain property in South Fayette Township, Allegheny County, Commonwealth of Pennsylvania. Said property was acquired by petitioner by way of two transactions: the first transaction was a deed from Marcella O'Reilly, et al., dated December 31, 1973; the second transaction was a deed from the estate of Joseph G. Corless, dated October 24, 1986.

3. The properties which were the subject of these two transactions are located side-by-side and were severed in part by the Commonwealth of Pennsylvania, then Department of Highways, by the recording of a plan with the Office of the Recorder of Deeds of Allegheny County, Pennsylvania, entitled "Drawings for Establishment of Limited Access Highway and Condemnation of Right-of-Way and Prohibition of the Erection and Maintenance of Outdoor Advertising Devices" (the plan") on the 19th day of December 1963. The condemnation was for the purpose of construction of Interstate 79. Petitioner was not the owner of the subject property in 1963, but became a successor in interest in the 1973 and 1986 acquisitions abovementioned. A copy of the plan is attached hereto as

exhibit "A".[1]

4. Respondent, Hickory on the Green Homeowners Association ("HOG"), is a Homeowners Association and is the owner of certain land located at the end of Clubview Drive in the Township of South Fayette, County of Allegheny. Said land is shown on exhibit "B" which is attached hereto. There is no actual private road across the HOG property although exhibit "B" includes a reference to a "Private Road".

5. A fifty (50') foot public road known as Clubview Drive terminates at the westerly boundary of the HOG property.[2] The fifty (50') foot public road known as Clubview Drive was constructed in the 1990's and was accepted as a public street by South Fayette Township in 2001.

6. Respondent, Mary Lou Sorbara ("Sorbara"), was the owner of that certain property adjacent to the easterly boundary of HOG's property. Said property is now owned by Mark Polk. It is also depicted on exhibit "B" which is attached hereto. The property of Sorbara was acquired from Helen Sabo. The Sabo family owned that property at the time of the 1-79 condemnations.

---

1. Although attached to the original stipulation of facts, the exhibits referred to in the stipulation are not attached to this memorandum, since unnecessary to our analysis, and since attachment, therefore, would, unnecessarily encumber the record.

2. From the exhibits attached to the stipulation and other maps admitted into evidence, it appears that the boundary between the Hickory on the Green property and the Sorbara, formerly Sabo, now Polk, property, would actually be the easterly boundary of the Hickory on the Green property. It, also, appears that Clubview Drive does not extend all the way to the easterly boundary of the Hickory on the Green property, but ends in a cul de sac approximately 600 feet from that easterly boundary.

7. Petitioner has two pieces of property after the condemnation which have frontage on Fairview Lane and Washington Pike. They are used for the purpose of farming and his residence. In addition, petitioner has two pieces of property after the condemnation which have no access to a public road. They are vacant and unused.

8. Petitioner's two parcels of real estate without public road access abut the easterly boundary of the Sorbara property, as is depicted on exhibit "B", which is attached hereto.

9. No property owner at the time of the original 1-79 condemnation case is now available to testify concerning facts, actions or intentions of the condemnor nor [sic] condemnees.

10. After the conclusion of the I-79 condemnations by the Commonwealth, petitioner determined there was no access from a public road to the two severed parcels. From August 25, 1999 through November 7, 2000, petitioner requested access to Clubview Drive by building a road across the property owned by HOG. On December 5, 2001, petitioner's request was denied.

11. Petitioner did not attempt to invoke the Private Road Act until over forty years after the I-79 condemnations and three years after the township's acceptance of Clubview Drive as a public street.

In addition, we make the following findings.

12. The landlocked parcels for which petitioner is requesting access became landlocked because of the 1963

condemnation by the Commonwealth of portions of the larger tracts of which the presently landlocked parcels were a part, for the purpose of construction of Interstate 79.

13. The fact that the condemnation caused the subject parcels to be landlocked, and the resulting diminution in the market value of the landlocked parcels, were taken into account in calculating the compensation that the Commonwealth paid the then owners of the land.

14. Petitioner's predecessors in title who owned the subject parcels at the time of the condemnation, were compensated for the fact that the parcels had become landlocked, by the Commonwealth's payment to those owners of an amount almost equaling the amount that was paid for land that was actually taken by the condemnation.

15. There is no evidence that, at the time of the subject condemnations, either the Commonwealth or the affected landowners, including those landowners whose 'property had become landlocked, contemplated use of the act to gain access to the parcels that had become landlocked by the condemnation.

16. Petitioner was not aware when he acquired the subject landlocked parcels, and has not subsequently become aware, of any arrangement or agreement among the parties to the condemnation of land for construction of Interstate 79 that access to the subject landlocked parcels was to be obtained by use of the act.

16. Petitioner knew that the subject parcels were

landlocked when he acquired them.

17. Neither Hickory on the Green nor Clubview Drive existed when the Commonwealth of Pennsylvania exercised its eminent domain power to condemn land for the construction of Interstate 79 in the early 1960's.

18. Petitioner's predecessors in title who owned the subject properties at the time of the subject condemnation, each signed a deed of release and quitclaim that released the Commonwealth and PennDOT from all claims related to the taking, including any claims "through or by reason of the deprivation of the right of access, egress and ingress to and from said section of highway."

19. It was impractical to attempt establishment of a private road for access to the petitioner's two parcels until construction of Clubview Drive in the Hickory on the Green subdivision

20. If access is not established, the subject two parcels of land will remain unused and undeveloped.

21. Petitioner did not present evidence of any specific use, development or enterprise that he intended for the subject parcels, in the event the proposed access road were to be built.

## DISCUSSION

As noted at the outset, the Supreme Court included in its remand a direction to consider in more detail the relevance of the Commonwealth's condemnation of land for the construction of Interstate 79, whether petitioner's use of the act was contemplated at the time of the condemnation

in 1963, and whether petitioner "acted with reasonable promptitude such that the two takings reasonably might be regarded as an interconnected course of events....". *In re: Opening a Private Road for the Benefit of O'Reilly,* 607 Pa. at 300, 5 A.3d at 258. The Commonwealth Court's remand included the direction to hold a hearing and make findings of fact on these issues, and, also, to consider any other evidence relevant to determining who the primary and paramount beneficiary of the proposed taking would be.

There is no question that the 1963 condemnation of land for the construction of Interstate 79 is related to petitioner's present proceedings to establish a private access road under the act's provisions. The condemnation and construction of the Interstate highway caused the subject parcels to be landlocked. However, that simple cause and effect relationship does not constitute the "interconnection" or "interrelationship" contemplated by the Supreme Court as providing evidence of a public purpose of the opening of petitioner's requested private road. More is needed than simply cause and effect. If merely cause and effect were sufficient, there would be no need to undertake the inquiry directed by the Supreme Court. Overarching the inquiry is the Supreme Court's direction that the basic test to be met is whether "the public is to be the primary and paramount beneficiary" of the opening of petitioner's requested road, *Id.*, 607 Pa. at 299, 5 A.3d at 258, and it is in this context that the issue of "interconnection" or "interrelationship" must be addressed.

Pursuant to the Supreme Court's direction, in order to

conclude that the benefit to the public from construction of Interstate 79 is justification for a finding that the public is the primary and paramount beneficiary of the opening of the presently requested private road, the two takings must be "interconnected", and important to that determination will be the answer to the question of whether, as part of the condemnation process, the parties to the condemnation contemplated use of the act as a remedy. In addition, the Supreme Court suggested that the timing of the request for access would be a significant factor in resolving that issue.

There is no evidence that petitioner's predecessors in title, the Commonwealth, or any party involved with the 1963 condemnations contemplated use of the act to restore access to the landlocked parcels. There is no evidence of any agreement or arrangement between the Commonwealth and the owners of the severed tracts envisioning use of the act for access. Petitioner was not aware when he acquired the subject parcels in 1973 and 1986, and has not subsequently become aware, of any arrangement or agreement among the parties to the condemnation, that access to the landlocked parcels was to be obtained by use of the act.

We note that perhaps at the time condemnation was effected, the Commonwealth could have elected to condemn additional land to allow construction of an access road to serve those landowners whose properties were severed. However, whether construction of such an access road was a realistic or practical possibility or not, the Commonwealth chose instead to compensate petitioner's

predecessors and those similarly situated by the payment of an amount of money that accounted for the diminution in value caused by the severance. If such an access road had been built at the time Interstate 79 was constructed, although objection could have been made, strong argument would have supported the Commonwealth's decision to establish access rather than to pay compensation. However, as the condemnation proceeded, payment of compensation served as a substitute for access, and made establishment of access unnecessary to effect completion of the Interstate.

Although the Supreme Court suggested that a relevant factor might be whether the request for a private road was made with "reasonable promptitude", we have determined that, under the circumstances presented here, and in the context of considering the issue of "interconnection" or "interrelationship", whether the timing of the filing of the petition under the act was "reasonable" is not a relevant test. The issue is the constitutionality of the proposed taking, resolution of which, in turn, will depend upon whether the public will be the primary and paramount beneficiary. In this context, the filing would be "reasonable" whether filed immediately after the condemnation, or 40 years later.[3]

---

3. It is solely interconnectedness with the condemnation that is at issue pursuant to the Supreme Court's and Commomnwealth Court's remands, and the "reasonableness" of the timing of the petition was raised by the Supreme Court's majority opinion only in that context. If we were to consider the issue as having been raised otherwise, traditional pleading practice would suggest the impropriety of raising such a defense at this stage of the case. However, if the timeliness issue were to be examined, the contention that the petition is not vulnerable to limitations or laches objection appears to have merit. The remedy is provided by statute. Petitioner's analogy to the concept of "continuing wrong" is apt. So long as the subject parcel is landlocked, the landowner may seek

However, aside from any issue of "reasonableness", the timing of the filing of the petition might be relevant on the question of possible interrelation between the condemnation and the request for opening of a private road to gain access to parcels of land that became landlocked as a result of the condemnation. The filing of a petition under the act immediately, or a short time, after the condemnation, might provide some evidence that use of the act was contemplated at the time of the condemnation, and consequently, some evidence that the condemnation and request for relief under the act were related. In actuality, the fact that a petition was not filed until 2004 is consistent with a conclusion that use of the act was not contemplated at the time of the condemnation and that the two events are not interconnected in the manner deemed by the Supreme Court to be necessary to support a finding that the primary benefit to be gained from establishment of the requested road, is the safer, more convenient travel, and promotion of commerce, that was provided by construction of Interstate 79. The record contains insufficient evidence upon which to base a finding that the parties contemplated use of the act in connection with the condemnation plans, and, consequently, insufficient evidence upon which to base a finding of "interconnection" in the sense contemplated by the Supreme Court that the

---

relief under the act. In addition, petitioner's testimony describing the impracticality of construction of an access road prior to the construction of Clubview Drive; the fact that Clubview Drive was constructed in the 1990's; that from August 25, 1999 through November 7, 2000, petitioner requested access to Clubview Drive; that Clubview Drive was opened as a public street only in 2001; and that petitioner's request was denied on December 5, 2001; militate against the suggestion that petitioner failed to act with reasonable promptitude by filing his petition in 2004.

requested road's present primary and paramount benefit is the safer, more convenient travel for the motoring public, and enhancement of development, that was provided by the construction of Interstate 79.[4]

Consequently, although, without the construction of Interstate 79, there would be no need for the requested access road, and although severing of the tracts of petitioner's predecessors in title appears to have been reasonably necessary to provide the public with the benefit of faster, safer and more convenient travel by motor vehicle, and promotion of commercial progress along the Interstate corridor, the present inquiry must be whether opening of the requested road now will primarily benefit the public at large.

Remaining for resolution, then, is the question of whether, even if not interconnected with the 1963 condemnation and construction of Interstate 79, the public otherwise can be considered the "primary and paramount beneficiary" of the opening of the proposed private road.

As suggested in note 7 to our October 26, 2007 opinion, *In the Matter of Opening a Private Road for the Benefit of O'Reilly*, No. 04-2972, slip op. at 20, n. 7 (C.P. Allegheny, Oct. 26, 2007), and as discussed in Justice Newman's

---

4. Although, as a refinement of the analogy to an easement by necessity, it could be argued that the Commonwealth's severance of the tracts of which the subject landlocked parcels were a part raises an implication that an easement will be required across adjoining property, similar to the doctrine of easement by necessity, lacking is the element of severance by a common owner deemed important by the Supreme Court majority, as noted, *supra*, p.4. Also, as discussed, *supra*, p. 11, if mere cause and effect were sufficient to show the required "interconnection", the Supreme Court would have so concluded, and remand and the present inquiry would have been rendered unnecessary.

dissenting opinion in *In re: Forrester*, 836 A.2d 102 (Pa. 2003), and in the dissenting opinion expressed by Justice Eakin in the present case, opening of a road to provide access to landlocked property pursuant to the provisions of, and meeting the requirements established in, the act, can serve a significant public purpose (as well as conferring significant benefits to the petitioning landowner), by unlocking access to the resources of landlocked property. However, as expressed in the Supreme Court majority opinion directing remand, that general public benefit, even if significant, is not sufficient.[5] To meet the constitutional standard, the public must be the "primary and paramount beneficiary" of the taking.

In the instant case, the evidence of public benefit consists of petitioner's generalized indication of intent to use the subject parcels for some productive purpose, and the general benefit to the public that results from the opening of land to productive use, as described *supra*, and in petitioner's deposition and hearing testimony. However, the Supreme Court majority opinion in the instant case indicates that the general benefit to the public is insufficient. Petitioner's generalized expression of intended use provides no

---

5. Perhaps, at the time the act was passed, by establishing a procedure separate from eminent domain, the Legislature recognized as obvious the public interest served by promoting development and recovery of resources on then large unused and landlocked tracts of land. Perhaps times have changed to the extent that the public interest that prompted passage of the act is now not as evident, or, in fact, the need has so diminished in significance because of population growth and density, development of land, and, in some cases, the desire to protect land from development, that the public purpose that might have been obvious at the time the act was passed, is no longer apparent, and that relief should not be granted absent proof of special circumstances showing some specific benefit to be derived by the public from a specific proposed use.

additional evidence of public benefit. In the analysis of "interconnection" or "interrelationship" discussed, *supra,* we concluded that the 1963 condemnation of land for the purpose of construction of the Interstate, cannot provide the basis for a finding that the public would be the primary and paramount beneficiary of the opening of petitioner's requested road.

Consequently, although we find that the public at large would derive a benefit from the opening of the proposed private road that might equal the benefit conferred upon the petitioner, the evidence does not support a finding that the public would be the "primary and paramount" beneficiary. Consequently, our order will sustain respondents' preliminary objection challenging the constitutionality of the proposed taking, and, for that reason, will dismiss the petition for the appointment of a board of viewers pursuant to 36 P.S. section 2731, et seq. Respondents' other preliminary objections will be sustained and overruled as expressed in our October 26, 2007 opinion and order.

## CONCLUSIONS

1. There is no evidence that any of the parties involved in the 1963 condemnation of the land of petitioner's predecessors in title contemplated use of the act to restore access to the parcels of land that became landlocked by the condemnation of land for construction of Interstate 79.

2. Petitioner was not aware when he acquired the subject landlocked parcels, and has not subsequently become aware, of any arrangement or agreement among, or expression by, the parties to the condemnation of land

for construction of Interstate 79 that access to the subject landlocked parcels was to be obtained by use of the act.

3. The condemnation and taking of land of petitioner's predecessors in title for the purpose of construction of Interstate 79 is interconnected with the present petition for opening of a private road, only in the sense that the condemnation of land of petitioner's predecessors in title for the construction of Interstate 79 caused the parcels owned by petitioner that are the subject of these proceedings, to become landlocked.

4. The taking effected by the condemnation of land of petitioner's predecessors in title for the construction of Interstate 79 and the taking proposed by the present petition to open a private road, do not constitute an interconnected or interrelated course of events that would support a conclusion that the opening of petitioner's proposed private road can be considered as serving the public purpose and interest that was served by the condemnation and taking of land for the construction of Interstate 79.

5. Under the United States and Pennsylvania Constitutions, private property can only be taken to serve a public purpose, and to satisfy this obligation, the public must be the primary and paramount beneficiary. *In re: Opening a Private road for the Benefit of O'Reilly,* 607 Pa. at 299, 5 A.3d at 258.

6. Opening of the proposed road would serve a public purpose and would be of benefit to the public at large, by providing access to presently inaccessible resources, the opportunity for development of the land, and enhancement

of tax revenues.

7. Opening of the proposed private road would be of benefit to petitioner, by providing the opportunity for development of the previously landlocked parcels, and by increasing the land's value and marketability.

8. The evidence of record does not support a finding that the public would be the primary and paramount beneficiary of the opening of the road proposed by petitioner.

### ORDER

Now, this 5th day of March, 2013, upon remand, after hearing, receipt of briefs and further argument from counsel, and consideration of the respondents' preliminary objections to the amended petition for the appointment of a board of viewers pursuant to 36 P.S. section 2731, et seq.,

It is ordered that the preliminary objections are sustained in part and overruled in part as follows:

I. The preliminary objection based on untimely service is overruled.

II. The preliminary objection alleging violation of procedural due process is overruled.

III. The preliminary objection that the Petition for Appointment of a board of Viewers improperly seeks to grant an adjoining property owner permission to use the proposed road is sustained, and the request that the adjoining property owner be granted access to the road is stricken.

IV. The preliminary objection alleging that the opening of the proposed road under the Private Road Act, Act of 1836, June 13, P.L. 551, §11, as amended, 36 P.S. §2731, et seq., is unconstitutional, is sustained, and the petition is dismissed.